# Galyon & Co., for use, etc., *v.* Ketchen and others.

## (*Knoxville.*   September 25th, 1886.)

1. CONTRACT. *For building house. Destruction before completion. Loss. Acceptance.*

   Where a contractor agrees to furnish all materials, and build a specified house, and to receive payment therefor, in part, as the work progresses, and balance upon its completion, if the house is destroyed by fire before its completion and delivery to the owner, the loss falls upon the contractor, and not upon the owner; but if the owner accept the property when nearly but not entirely completed, any loss occurring thereafter must fall upon him.

   Cases cited and approved: Wilson *v.* Knott, 3 Hum., 473; Butterworth *v.* McKinley, 11 Hum., 206; Clark *v.* Spence, 4 Adol. & Ellis, 448.

2. FIRE INSURANCE. *Loss. Right to proceeds. Priority of assignee over mechanic's lien.*

   The holder of a mechanic's lien upon property has no claim upon insurance effected by the owner and assigned to a mortgagee of the property after loss, but before the lienor's bill is filed.

   Cited: May on Insurance, Section 456, pages 690, 691.

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County. January Term, 1886.   W. B. STALEY, Ch.

Suit to enforce a mechanic's lien, brought by Galyon & Co. for use of S. A. Galyon, against George Ketchen and wife, as the owners of the property upon which the lien was claimed, the Savings, Build-

ing and Loan Association as mortgagee thereof, and the Knoxville Fire Insurance Company, which had issued a policy of insurance upon the building upon said land. A loss had occurred, and complainants by their bill attached the insurance. There was a decree below dismissing the bill, and complainants have appealed.

JAS. COMFORT for complainants.

A. S. PROSSER for defendants.

SNODGRASS, J. On the 5th of March, 1885, Galyon & Co., contractors, of the city of Knoxville, entered into the following agreement for the building of a house in Gill's addition to said city with Defendant Ketchen:

"Articles of agreement between G. H. Ketchen, of the first part, and L. A. Galyon & Co., of the second part, entered into this 5th of March, 1885, as follows: The said Galyon & Co., of Knoxville, Tenn., do agree and covenant, their heirs or assigns, with G. H. Ketchen to furnish all necessary labor and material for the erection of a five-room house, to be built on lot No. 90, in Gill's addition to Knoxville, complete according to plans and specifications (except plastering of whole job, which is to be furnished by owner, and all the finish in two rooms; and also one chimney and two grates; and also one partition and presses). The said party

of the first part agrees to pay the parties of the second part the sum of $900, in installments as follows: $150 when the house is raised, $50 payable April the 15th, when house is weatherboarded and covered, and the remainder when house is entirely finished, except the amount on lumber, which is to be settled in ninety days, or when house is finished, according to convenience of owner.

"GEORGE H. KETCHEN, first part.

"L. A. GALYON & Co., second part."

While work was in progress on this building, on the 10th of April, 1885, Ketchen effected an insurance on the house at $700. On the same day he, with the knowledge of Galyon—and doubtless with his approval—mortgaged the property to the Savings, Building, and Loan Association, from which he received about $600, the larger part of which he paid to the contractors on the work done. It was understood at the time the property was insured and mortgaged that the insurance was for the benefit of the Savings, Building, and Loan Association, and the mortgage recites a contract of said Ketchen to so insure said house. The policy was placed in the hands of the officers of the Association, but by oversight it was not assigned to the Association until the 19th of May, 1885, just preceding the filing of complainant's bill and on the morning of the same day. It had, however, as before stated, been delivered to the Association, and of this the insurance company had notice.

The property in process of completion was burned down on the 16th of May, 1885. On the 13th of May Defendant Ketchen obtained a key of the house, and had his father move into it, intending himself to move in on the 21st inst., and thereafter have his father live with him. He would have moved the day following (Friday) but for objection of his wife on account of the superstition that prevails against moving on that day.

At the time the house was burned some painting still remained to be done, but it was, otherwise, so far as Galyon's work was concerned, complete.

The bill in this cause was filed against Ketchen and wife, the Savings, Building, and Loan Association, and the Knoxville Fire Insurance Company, attaching the lot on which the house burned, and the policy of insurance.

Answers were filed, proof taken, and the Chancellor decreed that complainants were entitled to no relief, and dismissed the bill. He also decreed that the insurance policy, to the extent of $609.10, should be paid to the Savings, Building, and Loan Association; and to this part of the decree complainant does not except. He appeals only from the other holding.

It is proper to state here that there was a further amount due complainant for building of fence, privy, and coal-house—for the two first thirty-five dollars and twelve dollars, upon contracts subsequent to that recited, and for the other six dol-

lars, the reasonable value of the work done without contract, aggregating fifty-three dollars. His account then stood, as stated by him:

| | | | |
|---|---|---|---|
| May | 12. | Due by contract for building, . . | $900 |
| May | 13. | 310 feet fencing, . . . . . . . | 35 |
| | | Privy, . . . . . . . . . . . | 12 |
| | | Coal-house, . . . . . . . . . . | 6 |
| | | | $953 |

CREDITS.

| | | | |
|---|---|---|---|
| April | 8. | By cash, $9, $11, $155, (inc. in same R.), . . . . . . . $165 | |
| April | 30. | By cash, . . . . . . . . . . 330 | |
| May | 9. | By cash, . . . . . . . . . 10 | 505 |
| | | Balance due, . . . . . . . . | $448 |

The decree refusing relief on complainants' claim against the insurance was correct. In May on Insurance, Section 456, page 690–1, treating of loss and subrogation, it is said:

"Indeed, it may be stated as a general rule that no one except the nominal assured, or his assignee, after loss, can claim, either from the insurer or from the party to whom the loss has been paid, any part of the proceeds of a policy unless by express agreement, or unless the policy covered property in which the claimant had an interest, and was intended and was effected, in part or in

whole, for his benefit and at his expense. Thus a mortgageor cannot recover from a mortgagee except under such circumstances, nor a mortgagee from a mortgageor, nor a consignor from a consignee, nor a vendee from a vendor, who, not having assigned the policy, had, after loss of the property sold, collected the insurance; nor a vendor from a vendee, nor a lessor from a lessee, nor a lessee from a lessor, nor a debtor from a creditor. In order to give the right to intervene between the insurer and the insured, the party intervening must have some relation to, or concern with, the contract of insurance, as when the mortgagee insures in his own name, but at the request and expense of the mortgageor."

But on the merits of the controversy between complainants, and Defendant Ketchen, the decree is erroneous. It has been held by this Court, that under a contract for the building of a house, in which the owner of the land was to furnish all material and board the contractor and laborers employed by him; control the plan and dimensions of the house; and on its completion pay so much per square in cash notes for the amount of work done, as determined by the measurement of competent workmen, loss occurring by fire, before completion, must be borne by the owner. 3 Hum., 473.

In the same case, it is said, that the rule is not the same where the contractor is to furnish materials, do the work, and control the whole oper-

ation, and, when finished and delivered, to be paid for it. Page 475. This is correct. Add. on Con., Vol. 2, Section 869.

Again, in *Butterworth* v. *McKinley*, 11 Hum., 206, this Court repeated the statement of this principle of law, while deciding that if a contract for delivery on final completion was modified by agreement to receive sooner, the purchaser would take the title, though something still remained to be done to the property by the seller, which, in such modified contract, he had agreed to do. That was a case in which Butterworth contracted with Cayce, a coach-maker, for a buggy of a certain description, to be completed and delivered at the price of $110. Before completion, while the buggy was untrimmed and unpainted, Butterworth and Cayce had a settlement, in which Butterworth paid Cayce ninety-five dollars for the buggy as it was, except that Cayce was to retain and paint it, and then deliver. The Court held that title vested in Butterworth from the date of this payment. In doing so the Court said:

"If, therefore, the case stood upon the original contract, at a given price, no property would vest in the purchaser, until the completion and delivery of the vehicle, or its approval by the purchaser, and *appropriation to him,* for that is equivalent to an actual delivery. But this is subject to just and reasonable exceptions."

One of the exceptions stated is in reference to contracts, to pay for property, as it progresses to

completion, in installments, the principle decided in the following case (*Clark* v. *Spence*) approved:

"The case of *Clark* v. *Spence* was a contract for the building of a ship, the price to be paid by installments, as the work progressed, and an agent of the purchaser was to superintend the building. The work progressed, and payments were made, but the builder became a bankrupt, before the ship was completed. In an action of trover, by the purchaser, against the assignees of the bankrupt for the ship, it was held that, on the payment of the first installment, the property in the portion of the ship then finished, became vested in the purchaser, subject to the right of the builder to retain it for the purpose of completing the work, and earning the rest of the price." And the Court say: "The rights of the parties will then be in the same state, as if so much of the vessel as is then constructed belonged to the purchaser, and had been delivered by him to the builder, to be added to and finished, and it will follow, that every plank and article subsequently added will, as added, become the property of the purchaser as general owner." 4th Adol. & Ellis, 448.

In reference to the facts of the case, in which, the foregoing and a similar case was cited with approval, the Court said:

"This was an approval of the article (the buggy) so far as it was completed, and an appropriation of it to the purchaser, in consideration of a price paid to the maker. The effect of this agreement

was, to pass the title to the purchaser at the time, before the completion and delivery, subject to the right of the maker to retain the possession, for the purpose of completing the article, and of earning the price agreed to be given for its completion." Pages 210, 211.

It is clear from the authorities cited, that where a contractor is to furnish material and do the entire work, and be paid for it only on completion, that he must bear the loss occurring before completion, and that if he is to be paid by installments, he must bear such loss occurring between dates of payment. It is equally clear that where, by contract, completion must precede delivery, the party entitled to have the property delivered to him may do so before completion, and thereby approve and accept the work done, become vested with the title, and responsible for the price agreed to be paid. And this may result although, there remains still, some part of the work unfinished.

A few days before the work on the house about which this controversy arises was completed, while some painting only remained to be done, Defendant Ketchen went to the painter, I. N. Hacker, who was doing this work for the contractor, and had a key of the house, and told Hacker that his (Ketchen's) father wished to move into it, and asked for the key. Hacker told him that the contractor, Galyon, was standing out there, and Ketchen should go and see him. Ketchen went out and saw Galyon, and came back and reported

that Galyon said let him have the key, and Hacker did let him, or his father, have it.

After this some articles of furniture were moved in, and Ketchen's father stayed there. Ketchen was himself to move in on the Monday following, this· conversation having occurred on Thursday preceding the burning on Sunday night. Hacker and his men continued work until Saturday evening, at which time he thought they—four or five hands employed—could have finished the painting in about three hours, except the porch floors that defendant did' not wish painted until after he moved in, and had requested him not to paint until after he moved in, as he feared they would be scarred up by moving. Galyon contracted with Hacker to do this painting at eighty dollars, and paid him in full, requiring no deduction, for the little amount left undone at the burning.

Upon these facts we think it clear, that defendant's action was an approval, and acceptance, of the work; and that it was delivered to him, and he must bear its loss.

The decree of the Chancellor is therefore reversed, and a decree will be rendered here for the balance due complainants, with interest and cost, and for the enforcement of his mechanic's lien, by a sale of the lot in controversy; sale to be made in default of payment of the amount decreed against defendant, with cost, within sixty, days from adjournment of this Court.