W. B. MILLER *et al. v.* SARAH FOX *et al.*

(*Knoxville.* September Term, 1903.)

1. **RELEASE OR DISCHARGE.** Of one joint obligor releases all, unless otherwise stipulated.

   A release or discharge in writing of one of several joint obligors releases all of them, unless it be stipulated otherwise therein. (*Post, p.* 341.).

   Code cited and construed: Secs. 5570 and 5571 (S.); secs. 4538 4539 (M. & V.); secs. 3789 and 3790 (T. & S. and 1858).

   .Cases cited and approved: Evans v. Pigg, 3 Cold., 395; Williams v. Hitchings, 10 Lea,\326.

2. **SAME.** In writing without new consideration is effective.

   A release or discharge of a debt in writing, without any new consideration passing, is valid, and will operate according to the intention of the parties. (*Post, p.* 341.)

   Code cited and construed: Secs. 5570 and 5571 (S.); secs. 4538 and 4539 (M. & V.); secs. 3789 and 3790 (T. & S. and 1858).

   Case cited and approved: Love v. Allison, 2 Tenn. Chy., 114.

3. **SAME.** Without consideration, and not in writing is void.

   A release or discharge of a debt, without consideration, and not in a signed writing, is void. (*Post, p.* 342.)

   Code cited and construed: Secs. 5570 and 5571 (S.); secs. 4538 and 4539 (M. & V.); secs. 3789 and 3790 (T. & S. and 1858).

   Cases cited and approved: Smith v. Harris, 3 Sneed, 553; Simpson v. Moore, 6 Bax., 371.

4. **SAME.** Verbal release upon consideration is binding; and does not release co-obligor, when.

   A verbal release is binding, if supported by a consideration, and a co-obligor will not be relieved thereby, if he consented to the release, and agreed to remain bound. (*Post, p.* 342.)

   Case cited and approved: Richardson v. McLemore, 5 Bax., 586.

Miller v. Fox.

5. **SAME. Same. Verbal release of one joint obligor for prepayment of his portion is binding.**

The release of one of several of the joint obligors by running a line through his name, in consideration of his prepayment of his portion of the debt before maturity, is effective to release him. (*Post, pp.* 342-345.)

Case cited and approved: Bank v. Shook, 100 Tenn., 436, 444.

6. **SAME. Oral release without new consideration is ineffective; case in judgment.**

The oral release of some of the joint obligors upon the payment of a portion of the debt owed after its maturity, without other consideration, is not binding, and is ineffective, and all the obligors remain bound for the balance of the debt.

---

FROM RHEA.

---

Appeal from the Chancery Court of Rhea County.— T. M. McConnell, Chancellor.

Burkett, Mansfield & Miller, for Miller.

A. P. Haggard, and Pritchard & Sizer, for Fox.

——

Mr. Justice Neil delivered the opinion of the Court.

On February 11, 1899, the assignor of the complainants recovered a judgment in the chancery court at Dayton, Tenn., for $1,826.75, against Sarah Fox, J. E. Line, and S. M. Winchester jointly, which, by a chain of subsequent assignments, became the property of complain-

111 Tenn—22

ants Burkett, Miller and Mansfield, and for their use held by and in the name of W. B. Miller, trustee.

On July 31, 1899, Miller, trustee, was paid $1,000 on this judgment by J. E. Line for himself and Winchester jointly.

Such proceedings were had in respect of this judgment as that an execution was issued and levied upon certain real estate, and the sale subsequently conceded to be void by all parties for want of notice to the defendant in possession. In the course of the present proceedings a bill was filed by Mr. Miller for the purpose of setting aside the satisfaction of the judgment and enforcing his lien upon the land through the court of chancery. The court of chancery appeals held that he was entitled to the relief sought, and that the land should be sold subject to the homestead rights of Mrs. Fox, the defendant. Thereupon the defendant Mrs. Fox appealed, and has assigned errors.

The chief question now in the case is whether Mrs. Fox was released by virtue of the release of Line and Winchester—a defense which is now insisted upon. The finding of facts upon this subject by the court of chancery appeals is composed, first, of the testimony of Mr. Miller, and, secondly, of the court's construction of that testimony. The court of chancery appeals quoted Mr. Miller's testimony as follows:

"I made, by correspondence, an agreement with Mr. Line's attorney, as I now remember, to the effect that if Line would make a payment of one thousand dollars on

Miller v. Fox.

the judgment for himself, or himself and Winchester
(he was a relative of Winchester, and appeared to be
acting for, or interested in Winchester), I would not
molest them (Line and Winchester) any more, but
would endeavor to collect the remainder of the judg-
ment from Mrs. Fox.    I don't remember that any writ-
ten agreement was executed—release, or anything of
the kind—to Line, but I intended to not bother Line
and Winchester any more, and, in so far as I could make
a binding agreement to look to Mrs. Fox, and discharge
Line and Winchester, on their paying one thousand dol-
lars, I undertook to do it.    I may have given them some
written agreement, but, if I did, I don't remember it.
I know and distinctly remember that I specially stip-
ulated the agreement made with Messrs. Line and Win-
chester was not to prejudice my rights against Fox, or
the rights of other interested parties."

The court of chancery appeals continues:

"This is the only testimony we find upon the question
as to whether this lease was in writing or not.    It is
true, as we take it from said statements, that there was
some correspondence, and an agreement with Miller and
Line's attorney, as stated in the foregoing testimony
given by Miller.    There is no evidence of any agreement
in writing, or otherwise to which Mrs. Fox assented,
and we are left to draw our inference from this state-
ment alone; and, while we do not think that this affects
the liability of Mrs. Fox as to the balance of the judg-
ment, after deducting the payment by Line, we cannot

find that this agreement in regard to this payment was in writing."

The foregoing finding was made by the court of chancery appeals in response to a petition for additional findings filed by the defendant Mrs. Fox. A petition for additional findings was also filed upon the same subject by the complainants. Responding to this, the court of chancery appeals, in the same finding, in speaking of the complainants, said: "They insist that the agreement should have been found by the court to be in writing, which, as to Mrs. Fox, we cannot do."

The finding of the court of chancery appeals is somewhat obscure, but, construing it, we are of the opinion that they meant to hold that there was no agreement in writing. They say that there is no evidence of any agreement, "in writing or otherwise, to which Mrs. Fox assented." This is a finding that there was no agreement whatever, either oral or written, to which Mrs. Fox assented. At the close of the paragraph the court finds, "We cannot find that this agreement in regard to this payment was in writing." This evidently has reference to the agreement referred to in the testimony of Mr. Miller. It could refer to no other. Therefore there is a finding by the court of chancery appeals that there was no agreement in writing.

The court of chancery appeals do not find that there was any consideration paid by Line and Winchester, further than the $1,000, which was a part of the judgment they already owed.

The question to be determined under these facts is whether Mrs. Fox was released by reason of the transaction above referred to between Mr. Miller and J. E. Line.

Code 1858, section 3789 (Shannon's Code, section 5570), reads:

"All receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto."

Section 3790, Code 1858 (Shannon's Code, section 5571), reads:

"All settlements in writing, made in good faith, for the composition of debts shall be taken as evidence, and held to operate according to the intention of the parties, although no release under seal is given, and no new consideration has passed."

In *Evans* v. *Pigg,* 3 Cold., 395, it was held that a release in writing of one of several joint obligors released all of the others.

In *Williams* v. *Hitchings,* 10 Lea, 326, it was held that, when the release was given in writing, the parties to the release could stipulate therein that it was not to affect the liability of another joint obligor, who was not a party to such writing.

In *Love* v. *Allison,* 2 Tenn. Ch. 114, Chancellor Cooper expresses the opinion that, if the discharge be in writing, it will operate according to the intention of the parties under the sections of the Code above referred

to, though for the composition of a debt, and without any new consideration. This statement is perhaps a dictum in that case, but the soundness of it as enunciating a principle of law cannot be doubted.

In *Smith* v. *Harris*, 3 Sneed, 553, it was held that a release without consideration, and not under seal, is void. Since seals have been abolished, and the sections of the Code above mentioned have been passed, the rule may be stated that a release without consideration, and not in writing, is void.

In *Simpson* v. *Moore*, 6 Baxt., 371, it was held that a release in writing, not signed by the obligee, would not be binding on him.

In *Richardson* v. *McLemore*, 5 Baxt., 586, it was held that a verbal release was binding if supported by a consideration, and that the co-obligor would not be relieved thereby if he consented to the release, and agreed to remain bound.

The case of *Bank* v. *Shook*, 100 Tenn., 436, 45 S. W., 338, presents the matter in a somewhat more complicated aspect. In that case it appeared that Shook was bound on a demand note with several other persons, the note being made payable to the First National Bank. Before maturity he insisted upon paying his proportion of the note, and upon being released therefrom. The bank agreed to this, accepting his proportion of the amount expressed by the note, and agreeing verbally that he should be released, thereupon running a line through his name as it appeared upon the note for the

Miller v. Fox.

purpose of erasing such name. His co-obligors were made acquainted with these facts in substance, and made no objection to them; on the contrary, continued to pay interest on the note for several years. At the time Mr. Shook paid his proportion of the debt all of his co-obligors were solvent. After several years had elapsed, and all of these co-obligors had become insolvent, the bank sued Mr. Shook upon the note, claiming that he was not released, because there was no consideration, he having paid, as insisted by the bank, only what he owed; that is, a part of the debt. The court adjudged that there was a consideration, in view of the fact that payment was made before the maturity of the note; also in view of the estoppel arising out of the fact that Mr. Shook had been allowed to rest for several years under the belief that he was released, while in the meantime all of his co-obligors had become insolvent, he himself alone remaining solvent, by reason of which facts he would be defeated of his contribution if compelled to pay. On these facts the court held that Mr. Shook was released, treating the transaction as purely verbal, on the ground that he had paid a consideration in addition merely to his proportion of the amount appearing in the note; that is, that he had paid this sum before maturity, and also by reason of the estoppel above mentioned.

The court also held that, even if the erasure did not amount to a writing, and the release could not be effective from this standpoint, still that the subsequent actions of the bank, assuming and treating it as valid, and

so dealing with it, might be ratification of the release
made by its officers, and that Mr. Shook would be re-
lieved on that ground. It does not appear from the
opinion that the co-obligors claimed a release; on the
contrary, judgment was taken against them without ob-
jection. The only question made was as to whether Mr.
Shook was released.

It is not denied in any of the foregoing authorities
that a release, to be binding, must either be in writing,
under the statute, or, if verbal, it must be supported by
some consideration other than the mere payment of the
proportion of the debt owing by the party claiming to be
released, or there must be some other circumstances
which make the payment more onerous than the mere
performance of the contract according to its terms; in
other words, there may be a release in writing under the
statute, which will relieve the obligor, even though no
consideration be paid further than such part of the debt
as may be agreed upon by the obligor or obligee. This
release may provide that co-obligors are not to be re-
lieved, and it will have effect according to its terms;
that is, the latter will not be released. The general rule
is that a verbal release is not binding. But it is binding
if supported by a distinct consideration in addition to
the payment of a portion of the debt; as where such por-
tion is paid before the maturity of the obligation, or
where such payment is made at a place different from
that appointed in the contract. *Jones* v. *Perkins,* 64
Am. Dec., 136; Lawson on Contracts, section 104; 2 Dan.

Miller v. Fox.

on Neg. Ins., 285; *Bank* v. *Shook*, 100 Tenn., 444, 45 S. W., 338.

Applying the rules thus laid down to the present case, the necessary conclusion seems to be that Messrs. Line and Winchester, the co-obligors of Mrs. Fox, were not released, because the contract between them and Mr. Miller was not in writing, and it was unsupported by any consideration, and hence could not be good as a verbal release. It is true, they paid the $1,000, but this was only a portion of the debt itself, all of which they owed, and the payment was made after maturity. It follows that Mrs. Fox was not released, inasmuch as there was no contract to release her, and the basis on which she claims her release is found to be unsubstantial; that is, the supposed release of Line and Winchester.

It results that the decree of the court of chancery appeals simply crediting the $1,000 upon the debt and setting aside the satisfaction of the debt produced by the land sale, and decreeing the enforcement of the lien created by the levy of execution, subject to the homestead rights of Mrs. Fox, must, on the grounds above stated, be affirmed, with costs of this court.