THOMAS B. LYTLE *et al. v.* W. C. CLOPTON *et al.*

(*Nashville.* December Term, 1923.)

1. **ACCORD AND SATISFACTION.** Evidence held insufficient to establish acceptance of payment by attorney in satisfaction of debt.
Evidence *held* insufficient to establish acceptance by attorney of note or its proceeds in satisfaction of claim for services rendered so as to establish accord and satisfaction. (*Post, pp.* 661, 662.)

Case cited and distinguished: Hoggatt v. Clopton, 142 Tenn., 184.

2. **ACCORD AND SATISFACTION.** Fact that accord and satisfaction not pleaded may be considered in weighing such defense.
In action by attorney for compensation, fact that accord and satisfaction is not pleaded and relied upon, though not required to be pleaded, may be considered in weighing such defense. (*Post, pp.* 662, 663.)

3. **ACCORD AND SATISFACTION.** Accord and satisfaction defined.
An accord is agreement whereby one undertakes to give or perform and another to accept in satisfaction of a claim something other or different from that which he considered himself entitled to, and the satisfaction is an execution of such agreement. (*Post, p.* 663.)

4. **ACCORD AND SATISFACTION.** Offer and acceptance with intent to satisfy obligation essential.
To constitute accord and satisfaction an offer with intent to satisfy the obligation and an acceptance with intent that it shall operate as satisfaction are essential. (*Post, pp.* 663, 666.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —HON. JAS. B. NEWMAN, Judge.

E. J. SMITH, HOLLOWAY & COFFEY, H. T. STEWART, BROWN & WHITAKER, J. D. RICHARDSON and WISEMAN & KNOTT, for complainant.

W. C. CLOPTON, ALBERT WILLIAMS and S. L. FELTS, for defendants.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

The bill in this cause was filed by Thomas B. Lytle and J. J. Vertrees to recover solicitors' fees for services rendered the defendant, W. C. Clopton, in the cause of *Hoggatt* v. *Clopton,* in which title to a tract of land, worth in excess of $100,000, was involved.

It will not be necessary to detail the services rendered by the complainants to the defendant, since no question is made as to the reasonableness of the fees allowed by the chancellor, and this court, being familiar with that case, feels no hesitancy in saying that the fees of $10,000, fixed by the chancellor, were most reasonable.

Counsel for Clopton in their brief say: "The one question is whether there was an accord and satisfaction, and an extinguishment of the claim sued on."

Notwithstanding the foregoing statement, some question is made by counsel as to the severability of the fees, but the questions of multifariousness and misjoinder are made here for the first time, and hence cannot be considered by us.

If the complainants are entitled to the fees sued for, the question of their apportionment is one for determination by them, and one that does not concern the defend-

ant. There is some suggestion that Judge Lytle had been compensated for representing the defendant in the chancery court and the court of civil appeals, and that he was to receive no compensation for services in this court; but that insistence was not pressed by counsel in their argument, and it is not supported by the evidence.

The defense of accord and satisfaction, which was not formally pleaded, relates primarily to Mr. Vertrees under the facts, which we here detail as follows:

By the authority of defendant, Judge Lytle employed Mr. Vertrees to assist him with the cause in this court, the contract or agreement being that the fee of Vertrees should be fixed by Lytle and Clopton jointly. Vertrees had no communication with Clopton, either directly or by correspondence, as to the fee. That was arranged by Lytle and Clopton.

The record shows that Mr. Vertrees, out of his funds, expended $115 for printing briefs for use in this court.

On April 12, 1919, this court decided the case of *Hoggatt* v. *Clopton*, (142 Tenn., 184, 217 S. W., 657) favorable to the defendant, and he was notified by wire of the decision, and on the same day wrote Mr. Vertrees a letter, that part relating to fees being as follows:

"When I employed Mr. Lytle to assist me in the practical part of this business I supposed he would stay with me to the end, but shortly after the decision was handed down by the intermediate court he informed me that he had been appointed to the court of civil appeals' bench at Jackson, and was leaving the cases in your hands to present to the supreme court which was quite satisfactory to me. Besides his disbursements for printing my briefs for the civil court of appeals, I paid him in cash $350.00

for assisting me in the business, which he wrote me was quite satisfactory to him. He also wrote me that in retaining you in the business that you would leave your compensation to me, or my judgment. I, therefore send you a note I hold on T. O. Johnson for $612.00. He is my tenant on the Rutherford property and has been a tenant on that property for a number of years past. He is financially well fixed, and his credit stands high. This sum covers $300 for the preparation of your brief, $115.00 for the printing, $150.00 for your oral presentation of the same to the court, and $47.00 for discounting it, if you desire to, together with any minor disbursements you may have made in this matter for me. My indorsement is on the note, and of course if Johnson should fail to pay it I shall and will at the appointed time. I employed Mr. Hancock to assist me when these suits were instituted as he was to resign his position as chancery clerk, but the chancellor insisted on his remaining with him, when he retired and refused to make me any charge. I cannot close without congratulating you on your brief, and assuring you that it is worthy of the very best efforts of the American bar and no 'case lawyer's' brief. I trust this is quite satisfactory and with my best consideration I beg to remain."

Upon receipt of that letter Vertrees wrote Lytle, inclosing Clopton's letter, and stating that he understood that his fee was to be fixed by him and Clopton. Lytle agreed with Mr. Vertrees about the matter, and furnished him a copy of the letter written Clopton on November 9, 1918, in which he stated that the fee was to be so fixed, and which was assented to by Clopton, and Lytle also agreed to write Clopton about the fee, and he did write him in June, setting forth the contract, and suggesting

that they fix the fee in accordance with its terms. In his reply Clopton admitted the agreement to be as stated, but construed same to be that he alone was to fix the fee of Vertrees, and then wrote a number of pages in an attempt to sustain his conclusion that the services of Vertrees were of no value to him and that $250 would amply compensate him.

On October the 20th Mr. Vertrees wrote Mr. Clopton as follows:

"When Mr. Lytle approached me on the subject of your case, he stated that you desired to know what the fee would be. I replied that I did not fix fees in advance and that I would leave the matter of fee entirely to him and to you. Later he advised me that this was satisfactory and so I appeared in the case. "April 12th last you wrote me inclosing note on a Mr. Johnson for $612.00 due November 15th, next, with instructions to reimburse myself for the amount expended in printing briefs and to take so much thereof as a fee. Your letter stated that Mr. Lytle had written you that I would leave the question of the amount of my fee to your judgment—meaning, I assume, to your judgment alone. As that was a misapprehension, I replied that I would communicate with Mr. Lytle. Of course the note is still in my possession. Mr. Lytle informs me that he wrote me that he wrote you that the agreement was as I have already stated it to be, and that you now understand the matter as he did. I have never indicated what I thought the amount of my fee should be, either to you or to him, and I mean to take whatever you gentlemen may say is right. It is natural that you should infer that I did not think the amount which you indicated in your letter of April 12th was just.

"Whatever the difference, if any may be that exist be-tween you and Mr. Lytle, it is but just that you should take the matter of my compensation up with him by cor-respondence and settle with me. As stated, I shall accept whatever amount you gentlemen agree upon. I only ask that you agree, or attempt to do so. I see no reason for any difficulty in the matters for I desire nothing except a reasonable and proper amount."

Mr. Clopton did not reply to this letter until December the 6th, and the purport of same was that the amount which Mr. Vertrees had received was full compensation for the services rendered. Said letter covers 12 pages of the transcript, and is too long to be set out here. After receiving the letter of October 20th Clopton went to Rutherford county and had a conference with Hancock, who was his agent in said county in renting his lands and collecting his rents, and on November the 5th Hancock wrote Vertrees as follows:

"Judge W. C. Clopton, of Atlantic City, N. J., was here a short while back and informed me that he had turned over to you rent note of Tom Johnson, col., on the Hoggatt Farm, in this county for $612.00.

"I have had the control of this farm and looked after the renting and collection of rents for Judge Clopton for the past two years.

"He told me when he was here that he had turned over this note to you and that he was going to direct you to send it to me for collection of same, as he has already paid me for the collection of the rent notes and has in-cluded yours in the same.

"He suggested to me that I write you and inform you that he had done this and suggest that you send this note here.

"Johnson was here last Saturday ready to pay the note but I told him you had this note. He then said that as it was not due until November 15th he would wait until then.

"If you desire to follow Judge Clopton's plan you can send the note to me for collection and I will remit to you immediately upon the payment of the same without any cost to you."

On November 6th Mr. Vertrees replied as follows:

"I am in receipt of your letter of the 5th instant relative to rent note made by Tom Johnson for $612.00. In accordance with the suggestion of Judge Clopton I herewith inclose it to you. Judge Clopton sent me this note some time since and I held it pending the settlement of matters between him and me. Mr. Lytle can explain to you the situation.

"I assume, in view of your statement as to Judge Clopton's suggestion, that the collection of this note and remittance of the proceeds to me will in no wise affect the existing status."

Hancock collected the note and remitted the proceeds to Vertrees. Subsequently, Clopton declined to negotiate further about the question of fees, and this suit followed.

From the foregoing facts, as well as from the direct testimony of Vertrees, it is apparent that he did not accept the note in payment of his fee; he simply held the note pending the fixing of his fee by Lytle and Clopton. It is also manifest that in cashing Mr. Hancock's check for $612 he did not accept same in settlement of his claim against Clopton. Clopton knew that Vertrees had not accepted the note in extinguishment of his claim, and that he was insisting on his fee being fixed by him and Lytle.

If Hancock had stated in his letter to Vertrees that Clopton had authorized him to collect the note and remit the proceeds to him in settlement of his fee, we would have a very different case. But Hancock said nothing of the kind. The question of fee was not mentioned. Vertrees did not know what instructions Clopton had given Hancock further than was disclosed in the latter's letter; but Vertrees took the precaution to say, in effect, that he would accept the $612 with the understanding that it was not to affect the existing status. If Clopton intended the $612 to be tendered in full settlement he should so have instructed his agent, and it should have been so tendered. But it is not insisted, and could not be, that at the time the $612 was paid that anything was said about it being in extinguishment of Vertrees' claim for fees, and hence its payment constituted no accord and satisfaction, and the defendant is forced to take the position that the note was tendered and accepted in extinguishment of the claim, which contention, as already stated, is refuted by the evidence.

It will also be noted that in neither his letters nor his answer does Clopton say anything about an accord and satisfaction, but persistently and uniformly contends that the sum paid was ample compensation for the services rendered, and that appears to have been his real defense in the lower court. Accord and satisfaction was not even set up as a defense in his answer, and while, perhaps, in an action of this nature it does not have to be especially pleaded, the fact that it was not pleaded and relied on is a circumstance tending to show that this was an after-thought and not the real defense which he had in mind.

If there had been an accord and satisfaction, why pre-

pare and file a 20-page answer, the sole purpose of which was to show that the sum paid fully compensated complainants for the services rendered.

A very simple and satisfactory definition of an accord and satisfaction is that given in 1 Corpus Juris, 523, as follows, to-wit:

"An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement."

Instances may arise in which an acceptance, on the part of the offeree, will be presumed; or where, in the circumstances, the offeree will be held estopped to deny acceptance. Such a case will arise where a check was mailed to a party and cashed, on the face of which appeared, "in full settlement of account." The authorities, however, are not uniform on this proposition.

But we have no such case here. There was no agreement on the part of Vertrees to accept either the note or the money in settlement of his fee. In fact, neither was expressly tendered as such, and the note only inferentially so, but Vertrees did not accept or use same.

In 1 Corpus Juris, 529, it is said:

"To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable man-

ner.   It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction.    Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction.   The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction."

Mr. Caruthers, in his History of a Lawsuit, on page 238, says:

"Accord and satisfaction as a defense to actions for the recovery of debts means, that the parties have come to another agreement in substitution of the one upon which the plaintiff sues, and that the substituted agreement has been executed."

The element of "agreement," in so far as Vertrees is concerned, is absent, and the circumstances are not such as to raise a legal presumption of acceptance on his part.

In the second place, there was no dispute as to what Mr. Vertrees' fee should be.   There was a plain agreement as to how it should be determined.   Had Clopton said to Vertrees, "I repudiate our agreement and tender you $612 in settlement of what I owe you," and had Vertrees accepted same, whether in money, by check, note, or otherwise, there would have been an accord and satisfaction.

Clopton wrote Vertrees that he was to be the sole arbiter as to what his fee should be, and by virtue of such authority he fixed same at $612.   Vertrees' reply was, "You are mistaken about this.   I have the note and insist that my fee be fixed in accordance with our agreement."   Clopton thereupon had his agent to write for the note, collect same, and remit the proceeds to Vertrees.

In 1 Corpus Juris, 527, it is said:

"An essential element to sustain an accord and satisfaction of an unliquidated or disputed claim by the giving and acceptance of a less sum of money than that claimed, and nothing more, is a bona fide dispute or controversy. Here the consideration consists in the mutual concessions of the parties, and it may be added that it is the only consideration. However, it is obvious that a dispute or controversy is not an essential element of some forms of accord and satisfaction, as for instance an accord and satisfaction of a liquidated claim by the giving and acceptance of a smaller sum and some additional consideration, such as new security, payment before due, payment by a third person, payment of a less sum and costs, etc., or where property, or personal services, are accepted in satisfaction."

In the cause under consideration there had been no controversy about the fee. Clopton construed the contract to mean that he was to fix the fee, and, upon that assumption, mailed the note. If his interpretation of the contract were correct, and Vertrees had retained and collected the note, the matter would have been ended. But upon receipt of the note a controversy did arise, viz. as to whether Clopton and Lytle together or Clopton alone was to fix the fee, and from the beginning of the dispute to the filing of the answer Clopton's contention was (a) that he was to fix the fee, and (b) that the sum received was reasonable. Both contentions have been abandoned. Hence there was never any controversy as to the amount of the fee.

Another element is the offering and accepting of something other than that claimed.

Here no particular amount was claimed. Hence there

Lytle v. Clopton.

was no offer to pay a less sum nor an agreement to accept a different sum. The note was not offered in settlement of any dispute or as a compromise, but in full payment of the claim, according to the defendant's interpretation of the contract.

For the reasons stated the defense of accord and satisfaction has no application to the facts of this cause. That was the view entertained by the chancellor, and his decree will be affirmed.