PETER J. COLE, Appellee, v. W. B. HENDERSON,
EDNA MAE HENDERSON, Admx.,
AETNA CASUALTY COMPANY, Appellants.
—454 S.W.2d 374.

Middle Section. December 5, 1969.

Certiorari Denied by Supreme Court May 4, 1970.

Hooker, Keeble, Dodson & Harris, Nashville, for appellants.

Boult, Hunt, Cummings & Conners, Nashville, for appellee.

TODD, J. The defendants, W. B. Henderson, J. R. Henderson, and Aetna Casualty & Surety Company, have appealed in error from verdicts and judgments favorable to the plaintiff, Peter J. Cole, in his suit for breach of contract to share a commission upon a sale of real estate. Since appealing, J. R. Henderson has died, and his appeal has been revived in the name of his administratrix, Edna Mae Henderson.

This suit is based upon a written instrument which is as follows:

"Sept. 26, 1967

"Mr. Peter J. Cole   Jackson Shopping Center,
Murfreesboro, Tennessee

Dear Sir:

Regarding the Jackson Shopping Center, If a sale is made on the Jackson Shopping Center through your efforts, Henderson Real Estate Co. will split a commission with you on a 50-50 *baises*.

/s/ W. B. Henderson

W. B. Henderson

/s/ Peter J. Cole

Peter J. Cole''

The declaration alleged that W. B. Henderson was an employee and agent of J. R. Henderson d/b/a Henderson Real Estate Company; that Aetna Casualty & Surety Company was obligated upon J. R. Henderson's real estate agent's bond to the extent of $1,000.00 and upon W. B. Henderson's real estate broker's bond to the extent of $5,000.00; that the property mentioned in the aforesaid agreement had been sold as a result of the efforts of plaintiff; that Henderson Realty Company had received as commission for said sale a check of $50,000.00 and a one year note for $10,000.00; and that the defendants, J. R. Henderson d/b/a Henderson Realty Company and W. B. Henderson, had refused to pay plaintiff his part of said commission under said contract.

The defendants jointly plead not guilty, nil debit, and accord and satisfaction, upon which plea the plaintiff joined issue by replication.

After hearing the evidence, the jury returned a verdict in favor of plaintiff and against all defendants for $20,000.00.

The trial judge reduced the verdict against Aetna Casualty and Surety Company to $6,000.00, the maximum

of its liability on the aforesaid surety bonds, and entered judgment against the surety company for $6,000.00 with the following proviso:

> "which judgment shall be held for naught and unenforceable if the judgment against the defendants, J. R. Henderson and W. B. Henderson, and costs are satisfied in full * * *."

Judgment was entered against J. R. and W. B. Henderson for the jury verdict of $20,000.00, however, upon motion for a new trial, a remittitur of $5,000.00 was suggested and accepted by the plaintiff.

Thus, the present appeal involves a judgment of $15,000.00 against J. R. and W. B. Henderson and a judgment of $6,000.00 against Aetna Casualty & Surety Company as aforesaid.

The first assignment of error is as follows:

> "That the court erred in overruling the motions for a directed verdict made by the defendants and each of them separately and collectively, which motions were made at the conclusion of all the evidence, there being no evidence to permit this case to go to the jury."

Although other grounds are stated in support of this assignment, one of the propositions of law of appellants' brief is:

> "Where a check is delivered to a creditor marked in full payment of the indebtedness 'The moment the creditor indorses and collects the check, with knowledge that it was offered only upon condition, he thereby agrees to the condition and is estopped from denying such agreement. It is then that the minds of the parties

meet and the contract of accord and satisfaction becomes complete.' "

The said motions for directed verdicts were made during the trial in the following words:

"MR. HARRIS: Now, may it please the Court, at the conclusion of all the evidence, come the defendants and each of them, and move the Court for a directed verdict upon the ground that all the evidence shows that there has been an accord and satisfaction in this matter. * * *"

The issue of accord and satisfaction is determinative of the rights of plaintiff against all the defendants, and the facts in relation thereto are uncontroverted.

J. R. Henderson, d/b/a Henderson Realty Company, a licensed real estate broker, had a contract authorizing him to negotiate a sale of real estate known as "Jackson Heights Shopping Center." W. B. Henderson, son of J. R. Henderson, was a licensed real estate agent employed by Henderson Realty Co.

Plaintiff, Peter J. Cole, joined W. B. Henderson in the written agreement quoted above wherein Henderson Realty Company agreed to "split a commission" with Cole on a 50-50 basis if a sale of said shopping center should be made through Cole's efforts. The authority of W. B. Henderson to execute this instrument on behalf of Henderson Realty Company (J. R. Henderson) is not questioned.

Thereafter said shopping center was sold through the joint efforts of plaintiff Cole and W. B. Henderson. Mr. J. R. Henderson was present and participated in the final closing of the sale. It was agreed that the total sale

commission to be paid by the seller should be $60,000.00. $50,000.00 of this amount was paid by check payable to W. B. Henderson. The remaining $10,000.00 was evidenced by a promissory note due one year thereafter.

The transaction was closed on Friday, January 12, 1968. On the following Wednesday, January 17, 1968, W. B. Henderson caused to be turned over to plaintiff a cashier's check in the amount of $15,000.00 bearing the following notation:

"Remitter

W. B. Henderson
Commission in Full

Pay to the order of
Peter Cole."

The reverse side of said check bears the endorsement of Peter Cole and a bank stamp dated January 23, 1968.

Upon receipt of said check, plaintiff tried to reach W. B. Henderson without success. Thereafter events occurred which plaintiff relates as follows:

"Q. All right. That would be about four days, this would be Thursday, Friday, Saturday, Sunday, four days after you received this check, you talked with Mr. Henderson. Had he attempted to contact you at any time before that?

A. No.

Q. When he contacted you on this date, what did he tell you?

A. Well, he said, 'What's the trouble?' I said, 'You know what the trouble is, Bill. You owe me, $30,000, and you have only given me half.' He said, 'I don't owe you anything. I am not going to give you anything more.' I said, 'Bill, you promised this, and you promised it in writing.'

Q. And what was his reaction or reply to this?

A. Well, I can only give my impression. I might have forgotten it, because he said, 'No,' and then I said, 'Well, your wife wrote it out in your room, in your apartment—house, and you signed it.' Then, he said, 'Well, I can't talk about all this stuff over the phone.' He said, 'I will have my attorney call you.'

Q. All right, sir. Now this was on Sunday.

A. Either Saturday or Sunday. I am not quite sure.

\*     \*     \*     \*     \*     \*     \*

Q. And did his attorney contact you?

A. His attorney contacted me early Monday.

It should be noted at this point that the preceding events occurred *before* Tuesday, January 23, 1968, the date the check was cashed. The exact date of the first conversation in the office of defendant's lawyer is not clearly shown, as evidenced by the following testimony of plaintiff:

Q. All right. Now, at that point, of course, you were still holding the check of Mr. Henderson?

A. Yes.

\*     \*     \*     \*     \*     \*     \*

Q. Now, at the time that Mr. Henderson advised you that you would be contacted by his attorney, and you have indicated that you were, who did contact you?

\* \* \* \* \* \* \*

A. Mr. John Grissim.

Q. And then after that conversation, you had some conversation with his lawyer, the next day or so.

A. Yes, sir.

Q. And was it Mr. Grissim's office that you went to?

A. Yes.

\* \* \* \* \* \* \*

Q. And what sort of transactions took place there?

\* \* \* \* \* \* \*

A. As I recall, Mr. Grissim said, well, where is—where is the money, and he said, well, you know, he said, he's discounted the check—the note, and he had some obligations to pay off, with Associated Finance or Third National Bank or somebody else, and—

Q. Was there any suggestion made—

A. And then he made the suggestion, 'Why don't you try to settle with him? He may have some money at this time.'

Q. Did you make an offer at that time to Mr. Grissim?

A. We did. We made an offer to settle for $10,000.

Q. And that was communicated to Mr. Grissim, Mr. Henderson's attorney?

A. That's right.

Let it be here noted that the preceding testimony relates to a conversation with defendant's attorney "the next day or so" after the telephone conversation on Monday, January 22, 1968. The check was cashed by plaintiff on January 23, 1968. Thus, the record is unclear as to whether the first conversation in Mr. Grissim's office occurred before or after the check was cashed. Other communications with defendant's attorney occurred on subsequent days, as shown by the following testimony of plaintiff:

Q. And what did Mr. Grissim do on receiving this offer that you know of?

A. He—as far as I know, he transmitted the offer to Mr. Henderson, and received another offer in reply of $5,000.

Q. Now was that at the same time that the meeting that you were just talking about took place?

A. No, it wasn't. I believe there was a couple of days in there, a day or so.

Q. Several days later—

A. It's hard to say, because John Toney and I were with him, and then we went outside and went to have lunch and decided what we were going to do. We couldn't take it out of the hat. And then we called Mr. Grissim back, and I—I am not sure just exactly when he came back with that, but I know there was an alternate of five thousand.

Q. This was an offer communicated there to you through Mr. Grissim?

A. Through Mr. Grissim.

Q. The offer was how much?

A. No, excuse me, I remember now. Mr. Grissim said, 'Make you best offer that you won't take any—I mean, that's it,' which we did, and I understand later on that an offer of five thousand had come back, but Mr. Grissim did not communicate that with us, but he did have that offer, but he did not, communicate it, because we had offered $10,000 as our lowest figure.

Q. Now from whom do you understand that five thousand was offered or counteroffered by Mr. Grissim?

A. I—I understand it from Mr. Grissim.

Q. Mr. Grissim told you that?

A. Yeah.

Q. I see.

A. He told me through John Toney.''

On January 23, 1968, plaintiff mailed the following letter:

''January 23, 1968

REGISTERED MAIL—RETURN RECEIPT REQUESTED—SPECIAL DELIVERY

Mr. W. B. Henderson
3919 Brighton Road
Nashville, Tennessee

Re: Jackson Shopping Center, Murfreesboro, Tennessee

Dear Mr. Henderson:

In as much as there is no dispute between us and we have entered into an agreement (dated September 26, 1967) wherein we have agreed to a 50/50 split on the commission received, said commission amounting to $60,000. At the closing there was paid by the seller $50,000 in cash and a non-interest bearing note in the amount of $10,000 for a period of one year.

At this time, I have received from you only $15,000. I, therefore, request immediate payment of $10,000 in cash and an assignment of one-half interest in the $10,000 note from the Jackson Shopping Center.

If this is not done immediately, I have no alternative but to turn this matter over to my attorney for legal action.

Sincerely,

/s/ Peter J. Cole
Peter J. Cole

PJC:dc

cc: Mr. J. R. Henderson (also Special Delivery, etc.)
   3920 Kimpalong Road
   Nashville, Tennessee''

Upon mailing said letter on January 23, 1968, plaintiff proceeded to cash the aforesaid cashier's check of $15,000.00.

Attention is called to the undoubted fact that the first telephone conversation with the attorney, Mr. Grissim,

occurred on Monday, January 22, 1968, before the check was cashed on Tuesday, January 23, 1968; and the various other statements attributed to defendant's attorney occurred subsequent to January 22, 1968; and none are shown to have occurred before the check was cashed. There is no evidence as to when defendant learned that the cashier's check had been or was being cashed. The letter states that plaintiff has received $15,000.00 which might refer to the check itself, or the proceeds of the check. The letter does not otherwise notify defendant that the check was being cashed. The cashing of a cashier's check would not ordinarily come to the knowledge of the remitter in the same manner as his personal check which would appear as a charge on his bank statement.

In addition to the foregoing uncontroverted facts, which are determinative, a number of other controverted facts and insistences are presented by the record and briefs. Defendants strongly insisted that the "50-50" agreement was executed in contemplation of a sale to a particular prospect secured solely by plaintiff; that plaintiff's said prospect did not buy; that the ultimate sale was made to a combination of investors obtained partly by plaintiff and partly by defendant; that certain expenses were incurred which were deductible from commission before division; and that the parties had a verbal understanding that the plaintiff's part of the commission would be $13,000.00. There was also a serious issue as to whether liability existed against both J. R. Henderson, principal, and W. B. Henderson, agent, and whether the surety should be liable on one or both bonds. These controverted issues and the various objections, exceptions and assigned errors relating thereto need not be con-

sidered herein because the uncontroverted facts relating to accord and satisfaction are determinative.

The said uncontradicted facts and the first assignment of error present squarely the legal question of whether or not a creditor can assert the balance of his claim for commission after cashing a check marked ''commission in full'' under the circumstances above recited.

Tennessee authorities uniformly hold that the cashing of such a check will discharge a disputed claim. There are some decisions, and much dicta, to the effect that a liquidated or undisputed claim is also discharged by a written release, such as a check marked in settlement. Some statements in our decisions appear to require that the claim be disputed before it can be settled for less than the full amount, but these statements relate to the common law requirement for consideration, which does apply to oral releases but does not apply to written releases since the enactment of the statute which survives as our present secs. 24-706, 707, T.C.A. which read as follows:

"*24-706. Receipts and releases.*—All receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto. [Code 1858, sec. 3789; Shan., sec. 5570; Code 1932, sec. 9731.]

"*24-707. Settlements of debts.*—All settlements in writing, made in good faith, for the composition of debts, shall be taken as evidence, and held to operate according to the intention of the parties, although no release under seal is given, and no new consideration has passed. [Code 1858, sec. 3790; Shan., sec. 5571; Code 1932, sec. 9742.]"

■ As will be seen from the authorities cited and quoted hereafter, if the written instrument states an intention to discharge the debt, then the debt is discharged whether it is disputed or not and regardless of the amount paid in consideration of the release.

In Miller v. Fox, 111 Tenn. 336, 76 S.W. 893 (1903), the issue was the release of a joint judgment debtor by the release of other defendants. The Supreme Court held that none of the defendants had been released because the indebtedness was undisputed and there was *no evidence of a written release,* however, the court referred to seven previous Tennessee Decisions and the statute, sec. 3789, Code of 1958 (sec. 24-706 T.C.A.) and said:

"In Love v. Allison, 2 Tenn.Ch. [111] 114, Chancellor Cooper expresses the opinion that, if the discharge be in writing, it will operate according to the intention of the parties under the sections of the Code above referred to, though for the composition of a debt, and without any new consideration. This statement is perhaps a dictum in that case, but the soundness of it as enunciating a principle of law cannot be doubted." 111 Tenn. pp. 341, 342, 76 S.W. p. 894.

In Love. v. Allison, 2 Tenn.Ch. 111 (1874), cited with approval above, the court said:

"The equity of the bill which is rested upon the discharge of Thompson, in consideration of the payment by him of a part of the debt, was clearly no defence at law. Previous to the Code it would have been no defence in equity, for the part payment of a just debt was no consideration, and the release, consequently not binding. *If the discharge be in writing, it will operate according to the intention of the parties, under*

*our statute, though for the composition of a debt, and without any new consideration.* Code, secs. 3789, 3790. The defect in this bill is in failing to show that the discharge was in writing.'' 2 Tenn.Ch. p. 114 (emphasis supplied).

Code secs. 3789, 3790, cited in *Love,* are the present secs. 24-706, 24-707, T.C.A., quoted supra.

In Hussey v. Cross, Tenn. Court of Chancery Appeals, 53 S.W. 986 (1899), a defense of accord and satisfaction was sustained where there was a dispute as to the amount due, a check was tendered, and the words ''in full'' were erased therefrom by the creditor before he cashed the check. The Court said:

''* * * It is immaterial that the complainant erased the words 'in full' from the check. Of course, if this had been called to complainant's attention, and he had assented to it, then the amount paid would only have operated as a credit; but, *the amount having been tendered as a payment in full, the defendant was bound to receive it that way or not at all. Having received it, it was a settlement.* This decision will be found sustained by Fuller v. Kemp, 138 N.Y. 231, 33 N.E. 1034, 20 L.R.A. 785, and authorities cited in a note to that case on pages 795 to 801, 20 L.R.A.'' 53 S.W. p. 990 (emphasis supplied).

In Branch v. Jarrett, 2 Tenn.Civ.App. 419 (1911) judgment debtors claimed discharge from liability for the judgment because a co-defendant had obtained a written discharge upon partial payment. It was claimed that the (written) release was made ''under a distinct (oral) understanding and agreement—'' reserving rights against other defendants. The Court of Civil Appeals

enforced the total release of the judgment as to all defendants, and said:

"As authority for our view we cite the case of Hale v. Spaulding, 145 Mass. 482 [14 N.E. 534]; 1 Am. St. Repts., 475.— * * *

\* \* \* \* \* \*

"* * * The Supreme Court of Massachusetts in disposing of the case said:

'The words "in full satisfaction for his liability" import a release and discharge to Spaulding, and the instrument being under seal, it amounts to a technical release. The plaintiff does not controvert the general rule that a release to one joint obligator releases all * * * The difficulty with the plaintiff's case is, that there is nothing in the instrument before us to show such contrary intention. Usually a reservation of rights against other parties is inserted for that purpose; or the instrument is put in the form of a covenant not to sue * * * *Parol evidence to show the actual intention is incompetent.*' (emphasis added.)

\* \* \* \* \* \*

"There is an intimation in the language of Justice Neil in the case of Miller v. Fox, [111 Tenn. 336] 3 Cates, 336, 344, [76 S.W. 893] that such is the proper construction of our statutes.

\* \* \* \* \* \*

"We further think that the very wording of Shannon's Code, Section 5571, just copied herein, lends aid to the construction. According to that section it is the settlement *'in writing'* that *'shall be taken in evidence,*

and held to operate according to the intention of the parties,' thus indicating that the writing is the evidence of intention meant.

"We are aware of the liberal rules prevailing in Tennessee permitting parol testimony when it tends to establish an independent or collateral agreement rather than to contradict a writing, and for other purposes, as set out in the case of Hines v. Wilcox, [96 Tenn. 148] 12 Pickel, 148, and other cases. But carrying out what we regard as the legislative intent in the construction of the particular statutory provisions now under consideration, as well as giving a construction which we think is required by a sound public policy, we hold that the conditions such as are sought to be ingrafted into the writing by oral testimony in this case must be embraced in the writing itself, and cannot be set up by parol." 2 Tenn.Civ.App. pp. 426, 427

In Penrose v. Smith, 3 Tenn.Civ.App. 612 (1913) the debtor wrote the creditor a letter disputing the amount claimed and tendered a check which if accepted must be treated as in full. The creditor cashed the check and his suit for the remainder of the account was dismissed. Although the case in issue involved a disputed debt, the Court of Civil Appeals quoted with approval from a number of authorities, including Connecticut River Lumber Co. v. Brown, 68 Vt. 239, 35 A. 56, in which there was no dispute and in which the acceptance of a check "in full settlement of demands to date" constituted a valid satisfaction of the claim:

In Akard v. Standard Accident Co., 8 Tenn.Civ.App. 497, (1918) there was a plea of written accord and satisfaction. The Court said:

"* * * upon the facts of the case before us there is no evidence whatever of a difference or dispute with respect to the liability of the defendant for the sum paid at the time it was paid and the payment was in no sense made as a compromise or a settlement of an existing or threatened dispute.

"This brings us to a consideration of an issue which is not directly raised by the assignments of error, but which we think perhaps is sufficiently made, both by the pleadings and under the general terms of the assignments here made, and that is the effect which should be given the writing conceded to have been signed by the complainant as a release and discharge under the statute,—Thompson-Shannon's Code, Sec. 5570-5571. As quaintly defined in Sheppard's Touchstone, 320, 'a release is the giving or discharge of a right of action which a man hath, or may have or claim, against another man, of that which is his.' In order to be effective and binding a release was formerly required not only to be in writing, but under seal and when under seal it was good without consideration of any kind whatever. 34 Cyc. 1049. However, in this State, by statute, written releases have been accorded the same force and effect given at common law to releases under seal; that is, no consideration is necessary to support them. In support of this proposition as thus laid down in 34 Cyc., 1049, two Tennessee cases are cited: Miller v. Fox, 111 Tenn., 336; Williams v. Hitchings, 78 Tenn., 326. * * * Indeed, we think that the case of Miller v. Fox, supra, is ample authority for the proposition that where a release has been executed in writing without fraud, misrepresentation or duress and with every reasonable opportunity for considera-

tion of its terms and import, it will be binding, although without other consideration than the payment of a part of the obligation arising under the contract. On page 344 of the opinion in the case last cited will be found a statement of the rule in language too clear for misunderstanding. 8 Tenn.Civ.App., pp. 504, 505, 506.

In Harrison v. Webster, 1 Tenn.App. 313 (1925) it was held that the debtor was released where a check for $9.00 was received and cashed bearing the recital "for balance of $82.01 received from Mora B. Fariss, C. & M. after deducting credits heretofore paid."

In Moore v. Lowry, 2 Tenn.App. 241 (1925) the court held that a debtor was released where he complained of the quality of a shipment and tendered a check for part of the amount claimed marked "being settlement," which check was cashed by the creditor.

In Tippett v. Shaw, 9 Tenn.App. 132 (1926), this Court declined to enforce an *oral release* made without new consideration but said:

"The plaintiff insists that this agreement is not binding because it was not based upon a consideration, and that payment of a less sum than the whole is no consideration for a release.

"By the terms of the statute, Shannon's Code, sections 5570-1:

'All receipts, releases and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties, although no release under seal is given and no new consideration is passed.'

"Our Supreme Court, in construing these statutes, has held that if the release or discharge is in writing, it shall have effect according to the intention of the parties, even though it is not based on any new consideration. This is on the theory that all written contracts import a consideration, (Shannon's Code, sec. 3214) and it is therefore, not necessary that a consideration be set out in the contract. * * *

*     *     *     *     *     *

"In Tennessee the seals have been abolished by statute and a release in writing is sufficient without a consideration. See Shannon's Code, secs. 5570-1, and 3214." 4 Tenn.App., pp. 136, 137.

Shannon's Code, Sections 5570-1, quoted supra, survive in substance as secs. 24-706, 24-707, T.C.A. Shannon's Code sec. 3214, cited supra, survives as sec. 47-15-103, T.C.A., as follows:

"*47-15-103 Written contracts prima facie evidence of consideration.*—All contracts in writing signed by the party to be bound, or his authorized agent and attorney, are prima facie evidence of a consideration. [Code 1858, sec. 1805; Shan., sec. 3214; Code 1932, sec. 7829; T.C.A. (orig. ed.), sec. 47-1702.]"

The most recent pronouncement of the appellate courts of Tennessee upon the subject under discussion is Tullahoma Concrete Pipe Company, Inc. v. Pyramid Concrete Pipe Company, Inc., 46 Tenn.App. 559, 330 S.W.2d 578 (1959) wherein the debt was for a series of deliveries of concrete pipe about which no controversy existed except as to a ten percent discount claimed by debtor and denied by creditor. The checks sent to and

endorsed by the creditor did not contain any stipulation equivalent to "in full settlement," but merely showed that a deduction of ten percent had been made from the creditor's invoice in computing the amount of the check. The creditor notified debtor that he was crediting the checks as "partial payment" and that payment of the remaining ten percent was expected. This Court said:

"From the foregoing it will be observed that there was never any dispute between the parties as to the contract itself or the amount owing on said contract. The disagreement arose as to the 10% discount which the Chancellor found was not part of the agreement but which defendant insisted upon deducting because it claimed that it was a custom of the trade in transaction between dealers.

\* \* \* \* \* \*

"Furthermore, *it does not appear from the record that defendant offered the checks only on condition that they be accepted in full payment of the balance.* The question as to whether the 10% discount was proper or not remained in dispute as the circumstances and event occurred and continued in dispute after the checks were sent to the complainant. *There was no notation on the checks that they were in full settlement of the balance of the claim.* \* \* \*

\* \* \* \* \* \*

"[4] As is pointed out in Lytle v. Clopton, supra [149 Tenn. 655, 261 S.W. [664], 666] an accord is an agreement whereby one of the parties undertakes to give or perform and the other to accept in satisfaction of a claim in dispute, arising either from contract or

from tort, something other than or different from what he considers himself entitled to, and a satisfaction is the execution of such agreement.

"It is further pointed out that instances may arise in which an acceptance on the part of the offeree will be presumed; or where, in the circumstances, the offeree will be held estopped to deny acceptance. Such a case will arise where a check was mailed to a party and cashed, on the face of which appeared, 'In full settlement of account'. The authorities, however, are not uniform on this proposition.

"[5] It seems clear that *if the defendant herein had made a distinct notation on the checks* which were offered to the complainant *that they were in full settlement of the balance owing* and that complainant 'without objection', had cashed said checks there would have been an accord and satisfaction. * * *'' 46 Tenn.App., pp. 566, 567, 569, 330 S.W.2d pp. 581, 582, 583 (Emphasis supplied)

Plaintiff relies upon Mifflin Hood Co. v. Lichter, U.S. Dist. Court E.D.Tenn., 106 F.Supp. 220 (1950) wherein there was a disputed account for multiple deliveries of concrete blocks. The debtor sent to the creditor two checks. On the face of each check were listed the invoices being paid, with a deduction from the total for various credits claimed by the debtor. On the reverse side of each check was printed the following:

"Acceptance and endorsement of this check is acknowledgment of settlement in full of items listed on voucher attached bearing same date.'' 106 F.Supp., p. 229

The trial judge concluded that there was no accord and satisfaction, using the following words:

"The statement in reply to the plaintiff's protest, taken in conjunction with the fact that the legend on the back of the check above the endorsement was printed and therefore intended as an endorsement for payees of all its checks and was not especially prepared and inserted for this particular payee, *must be interpreted as indicating the intention of the parties that the checks were not given or accepted as an accord and satisfaction* of the accounts." 106 F.Supp., p. 230 (emphasis supplied).

Thus it is seen that *Mifflin* rests upon the content of the checks which did not express an unequivocal condition limiting the payee to acceptance only upon release of the entire claim. In *Mifflin* there was some intimation of a waiver of a condition of tender. Such intimation of waiver was considered by the court because of the ambiguous character of the notations on the face and reverse of the checks, and the alleged waiver of condition was in writing (a letter). In the present case, the notation on the check was clear, unambiguous and unequivocal, and the alleged waiver was oral (telephone conversation).

In *Mifflin* as in *Tullahoma Pipe,* supra, the portion of the debt paid by the check was undisputed. The remainder of the debt was disputed and left open for further discussion by the ambiguity in the checks and the conduct of the parties, especially written communications.

In the present case, there are no separate categories of undisputed and disputed items. There is only one item, the "commission" on one sale. If there could have been any doubt about the meaning or intent of the notation on

the check, or recognition of same by the plaintiff, such doubt was completely resolved before the check was cashed by the statement of the defendant to plaintiff, quoted above, "I don't owe you anything. I am not going to give you anything more." Thus, regardless of whether there was an actual dispute, known to plaintiff, when he received the check, there was a very definite dispute, expressed in a conversation between plaintiff and defendant, before the check was cashed. If a prior dispute were necessary to validate the release, which is not the case, the dispute was admittedly present and known to the creditor at the time he cashed the check.

The statement of the defendant that "I will have my lawyer call you," and of his attorney "why don't you try to settle with him * * * what would it take to settle it," (if the latter occurred before the check was cashed) cannot be construed as a waiver of the condition upon which the check was tendered. To hold thus would create chaos in business dealings. If a creditor can receive and hold a check marked in full settlement of a particular debt, retain possession of the check until he can obtain some expression of willingness to negotiate further, and then, during the negotiations, suddenly cash the check and sue for the remainder of his claim, there could be no bona fide effort to settle a matter until the check had first been returned to the possession of the debtor so that it could not be cashed. In short, the creditor cannot be allowed to negotiate with one hand while he is executing a written settlement with the other.

██ As has been stated repeatedly, an accord is a form of contract, governed by the general rules for contracts, including the elements of offer and acceptance.

The check sent to this plaintiff was an offer. At first he did not accept it, but he did not reject it, for he kept the offer (check) and the means of accepting the offer (endorsement and cashing) within his power and control. Therefore, the initial offer was a continuing offer, so long as plaintiff had the check. When he elected to endorse the check, he accepted the offer; and the accord was complete. The cashing of the check completed the satisfaction of the accord and the debt affected thereby.

In Helms & Willis v. Unicoi County, 166 Tenn. 639, 64 S.W.2d 200 (1933), cited by plaintiff, there were two debts, one for laying bricks in the construction of a school, and another for re-laying the bricks after the first brick wall was removed to enable the repair of fire damage. The court simply held that the words, "Balance on Fishery brick veneering contract—for Fishery Elementary School," were not sufficient to discharge both debts. There was a latent ambiguity in the release which was explained by parol evidence, as allowed by the parol evidence rule. Holmes v. Roddy, 176 Tenn. 624, 144 S.W.2d 788 (1940), 31 Tenn.App. 262, 214 S.W.2d 348 (1948); Earle v. I.C.R. Co., 25 Tenn.App. 660, 680, 167 S.W.2d 15 (1942).

In Lytle v. Clopton, 149 Tenn. 655, 261 S.W. 664 (1923), cited by plaintiff, the debtor tendered in settlement a promissory note payable to and endorsed by him. After the passage of considerable time, an agent of the debtor offered to and did collect the note and remit proceeds to the creditor. The creditor never accepted the note, with its attached conditions. He sent the note to the agent of the debtor, who collected the note and remitted proceeds with no condition attached. There was no unequivocal

*signed* acceptance of a condition of release, such as the endorsement of a check marked "commission in full."

Counsel have presented able briefs on other facets of this case which have been studied with interest and profit. However, the inescapable conclusion of this controversy is that the cashing of the check settled the matter, and under all the evidence, especially that of plaintiff himself, there were no factual grounds upon which the jury would have been justified in relieving plaintiff of the legal effect of the release executed by him.

Accordingly, a verdict should have been directed in favor of all defendants and against the plaintiff.

The judgment of the trial court is reversed, plaintiff's suit is dismissed and the costs of this appeal are taxed against the plaintiff-appellee.

Reversed and dismissed.

Shriver, P. J. (M.S.), and Puryear, J., concur.