[Civ. No. 55183. Second Dist., Div. Four. Feb. 19, 1980.]

DELWIN HARRIS, Plaintiff and Respondent, v.
EMI TELEVISION PROGRAMS, INC., Defendant and Appellant.

Counsel

Schiff, Hirsch & Schreiber, James P. Schreiber and Martin D. Singer for Defendant and Appellant.

Edward D. Benes for Plaintiff and Respondent.

Opinion

FILES, P. J.—Defendant EMI Television Programs, Inc. (hereinafter EMI) appeals from an ex parte judgment based on a sister state judgment and from an order denying its motion to vacate the ex parte judgment.

The facts revealed in the parties' declarations in support of and in opposition to EMI's motion to vacate are not in dispute. On or about July 1, 1977, EMI, while on location in Tennessee filming a motion picture, entered into an oral agreement with Harris for a 15-day use of Harris' 1966 Mercury Monterey sedan automobile at the rate of $35 per day. While EMI was using the car it was damaged in an accident. The parties negotiated for settlement of Harris' claim but reached no agreement. On August 25, 1977, counsel for Harris sent a demand letter to EMI at its Los Angeles office.

On September 2, 1977, EMI mailed to Harris a check for $950. A stub attached to the check was marked as follows: "Settlement re: Use automobile in making 'Lawman Without a Gun' (1966 Mercury Monterey Sedan - White)."

Harris did not respond, but filed a suit in Tennessee. Process for the Tennessee action was served on EMI at its Los Angeles office on September 19, 1977. EMI did not appear in the Tennessee action, and on October 27, 1977, a default judgment was entered against EMI for $3,630.

On December 12, 1977, a California attorney representing Harris telephoned the EMI office and talked with "the Coordinator of Business Affairs, Patricia Karlan, about the plaintiff's [Harris'] judgment." On December 16, 1977, Harris cashed the $950 check previously sent by EMI "and applied the proceeds toward satisfaction of the judgment."

On February 10, 1978, plaintiff, Delwin Harris, filed in the Superior Court of Los Angeles County an application for entry of judgment on the Tennessee judgment. Pursuant to Code of Civil Procedure section 1710.25 judgment was entered ex parte on February 16, 1978, in favor of Harris against EMI in the amount of $2,680 plus accrued interest of $56.80 and $51 for the filing fee. This amount reflects a credit of $950 against the Tennessee judgment.

On April 14, 1978, EMI filed its motion to vacate the California judgment pursuant to Code of Civil Procedure section 1710.40. The motion was heard on written declarations and, on April 25, 1978, the motion was denied. This appeal followed.

Inasmuch as the California judgment was entered ex parte pursuant to Code of Civil Procedure section 1710.25 upon an application supported by a foreign state judgment which was regular on its face, the entry of the California judgment was proper, and the appeal from it is unavailing. The proper subject matter of this appeal is the correctness of the trial court's order of April 26, 1978, denying the motion to vacate.

Code of Civil Procedure, section 1710.40, subdivision (a), provides as follows: "A judgment entered pursuant to this chapter may be vacated on any ground which would be a defense to an action in this state on the sister state judgment, including the ground that the amount of interest accrued on the sister state judgment and included in the judgment entered pursuant to this chapter is incorrect."

EMI's motion to vacate entry of judgment was made on the grounds "that the plaintiff's misconduct resulted in the sister state judgment being procured by fraud and that there has been a full accord and satisfaction to any claim made by plaintiff against defendant concerning the subject matter of the Tennessee judgment and the judgment has been satisfied."

Inasmuch as the oral contract and the damage claim both arose in Tennessee, resulting in a Tennessee judgment, and the acts relied upon to establish an accord and satisfaction of the Tennessee judgment took place in Tennessee, the legal effect of those acts must be governed by Tennessee law. (See *Grayhill Drilling Co.* v. *Superior Oil Co.* (1952) 39 Cal.2d 751, 754 [249 P.2d 21]; Rest.2d Conflict of Laws (1971) § 116.)

We must therefore determine whether the acts of the parties, as shown by the declarations for and against the motion to vacate, resulted in a satisfaction of the judgment under Tennessee law.

The controlling authority is *Cole* v. *Henderson* (1969) 61 Tenn.App. 390 [454 S.W.2d 374]. That was an action to recover a share of a real estate commission under a written contract which called for a 50-50 division. Defendant received a commission of $60,000 and gave to plaintiff a check for $15,000 bearing the notation "commission in full." Plaintiff cashed the check and sued for the balance due in accordance with the written contract. A trial court judgment in favor of plaintiff was reversed with direction to dismiss the action.

That opinion explains the principle of accord and satisfaction thus: "As has been stated repeatedly, an accord is a form of contract, governed by the general rules for contracts, including the elements of offer and acceptance. The check sent to this plaintiff was an offer. At first he did not accept it, but he did not reject it, for he kept the offer (check) and the means of accepting the offer (endorsement and cashing) within his power and control. Therefore, the initial offer was a continuing offer, so long as plaintiff had the check. When he elected to endorse the check, he accepted the offer; and the accord was complete. The cashing of the check completed the satisfaction of the accord and the debt affected thereby." (454 S.W.2d at pp. 384-385.)

The check with its notation which EMI sent to Harris was unquestionably intended as an offer to settle Harris' entire claim for the amount of the check. When Harris brought suit and obtained a judgment, his claim was merged in the judgment. But the check, which Harris continued to hold, was no less a continuing offer to settle whatever obligation was outstanding, whether in the form of an unliquidated claim for damages or a judgment for a sum certain.

There are California cases saying that for the principle of accord and satisfaction to apply there must be a bona fide dispute between the parties. (*Kelly* v. *David D. Bohannon Organization* (1953) 119 Cal.App.2d 787, 792 [260 P.2d 646]; see *Potter* v. *Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 597 [234 P.2d 16].) But the law of Tennessee is otherwise.

In *Cole* v. *Henderson, supra,* at pages 379-380 [of 454 S.W.2d] the court said: "Tennessee authorities uniformly hold that the cashing of

such a check will discharge a disputed claim. There are some decisions, and much dicta, to the effect that a liquidated or undisputed claim is also discharged by a written release, such as a check marked in settlement. Some statements in our decisions appear to require that the claim be disputed before it can be settled for less than the full amount, but these statements relate to the common law requirement for consideration, which does apply to oral releases but does not apply to written releases since the enactment of the statute which survives as our present §§ 24-706, 707, T.C.A. which read as follows:

"'24-706. *Receipts and releases.*—All receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto. [Code 1858, § 3789; Shan., § 5570; Code 1932, § 9741.]

"'24-707. *Settlements of debts.*—All settlements in writing, made in good faith, for the composition of debts, shall be taken as evidence, and held to operate according to the intention of the parties, although no release under seal is given, and no new consideration has passed. [Code 1858, § 3790; Shan., § 5571; Code 1932, § 9742.]'

"As will be seen from the authorities cited and quoted hereafter, if the written instrument states an intention to discharge the debt, then the debt is discharged whether it is disputed or not and regardless of the amount paid in consideration of the release."

Under Tennessee law when Harris indorsed and cashed the check on December 16, 1977, the judgment was satisfied. Satisfaction of the sister state judgment is a defense to an action on the judgment in California.[1] It follows that, although the ex parte California judgment was properly entered in accordance with statute on February 10, 1978, the trial court should have granted EMI's motion to vacate the California judgment upon the showing that the Tennessee judgment had been satisfied.

---

[1]Law Revision Commission comment 1974 addition, following Code of Civil Procedure section 1710.40 (West's Ann. Code Civ. Proc., 1979 pocket part) states: "Section 1710.40 allows the judgment debtor to make a noticed motion to vacate the entry of judgment on any ground which would be a defense to an action in this state on the sister state judgment. Common defenses to enforcement of a sister state judgment include the following:. . .the judgment has already been paid;. . ."

The order denying the motion to vacate the California judgment is reversed with directions to grant the motion. The appeal from the California judgment is dismissed as moot.

Kingsley, J., and Jefferson (Bernard), J., concurred.