HELMS & WILLIS *v.* UNICOI COUNTY.

(*Knoxville*, September Term, 1933.)

Opinion filed Nov. 18, 1933.

640

Sells, Simmonds & Bowman, and D. H. Rosier, for complainants.

Cox, Taylor & Epps, and W. A. Roberts, for defendant Unicoi County.

Mr. Justice McKinney delivered the opinion of the Court.

Helms & Willis, building contractors, filed the bill herein against Unicoi County, to recover an alleged balance of $362.63 due for labor performed in part construction of a school building. The chancellor entered a decree in favor of complainants for the sum sued for. The Court of Appeals reversed the decree of the chancellor and dismissed the bill. A petition for writ of *certiorari* has heretofore been granted by this court and argument waived.

Before the building was completed, it was destroyed by fire, and the other courts differed as to which of the parties should sustain the loss with respect to the particular part of the construction to be performed by complainants.

In 1924 the county decided to construct a brick veneer school building at Fishery, the work to be done on force account, with the exception of the veneering, which complainants contracted to do upon the following written agreement:

"Erwin, Tenn., July 5, 1924.
"The Board of Education of Unicoi County, Tenn.

"Dear Sirs: We propose to furnish the material and labor and all necessary scaffolding, and brick veneer the school house at Fishery for the sum of Nine Hundred

Sixty Dollars ($960). This also includes cleaning down the walls with acid and removal of scaffolding.

"Yours very truly,

"HELMS & WILLIS."

■ We wish to emphasize the fact that under this agreement complainants had nothing to do with the construction of the building, but, after the frame was erected and sheeted, they were to veneer same with brick. They had finished about 85 per cent of their work when the fire, for which they were not responsible, destroyed the building. The brick veneer remained intact, but had to be removed in order that defendant could rebuild the frame. When the frame was rebuilt, complainants replaced the veneering. There is no controversy as to the amount of this extra work; the dispute being limited to defendant's liability therefor.

The county carried insurance on the building to the amount of $6,000, but claims that its loss was $8,000. It will thus be noted that complainants did not have the management and control of the erection of this building, their work being a small proportion of the whole, and the ownership of and control over the construction of this building was at all times in the county. In these circumstances we think the loss falls upon the county.

In 6 Ruling Case Law, 980, 981, it is said:

"If one undertakes to furnish the material and build a house or other structure for a specified sum, the same to be paid for when the work is completed, the builder cannot recover for the partial construction in case the structure is destroyed without the fault of either party; and this rule applies when the structure is such as to make it, from day to day, as erected a part of the land to which it is intended to be permanently attached as

well as to a structure which is chattel in its nature. This rule has its foundation in the fact that it remains possible for the builder to complete the structure though in an unfinished state it is partially or wholly destroyed, and he is therefore left under the full obligation of his contract. In such a case, though the structure may have been so attached to the land as to become a part of it, and therefore the property of the owner of the land, the maxim, *res perit domino* has not been given effect. Of course, the contractor cannot recover for the part performance where the building is destroyed through his negligence, or where he has previously received the entire contract price. But on the principle sustaining the right to recover in case of the destruction of a building undergoing repairs, a contrary rule has been applied where a building had been destroyed after part performance of a contract to furnish a portion of the work and material used in its erection, or to furnish the work while the owner of the land is to furnish the material. Thus it has been decided that where one having nothing to do with the painting, glazing, carpenter or joiner work, contracts to furnish materials for the mason work of a building and perform the labor thereon, except that the owner for whom the same is to be constructed, is to furnish upon the ground all the sand, stone, and a certain quantity of lime, and haul all the brick, and the building, not being in the exclusive possession of such contractor, just before the completion is destroyed by fire, without the fault of the contractor, the loss must fall upon the owner, especially where he has the same insured at the time for his benefit; and such owner cannot require the completion of the balance of the building without restoring the parts which were so destroyed.''

The rule thus announced was approved by this court nearly a century ago in *Wilson* v. *Knott,* 3 Humph. (22 Tenn.), 473, 475. In that case Knott entered into a contract to build a frame dwelling house for Wilson upon his land. The dimensions of the building seem not to have constituted a subject of definite stipulation. The materials for the building were all to be furnished by Wilson, and he was also to board Knott and the laborers employed by him. Upon the completion of the work, Knott was not to be paid a specific sum in gross, but so much per square. When the building was far advanced towards completion it was destroyed by fire. Knott sued to recover for the value of his work, and recovered a judgment in the circuit court. In disposing of the case upon appeal, this court said:

"We have no doubt that the judgment below ought to be affirmed. The house was to be placed on Wilson's land, the materials were to be furnished by him, the dimensions were undetermined, the plan under his control and nothing was specified with respect to payment, but the rate of compensation according to admeasurement, and the mode, that is to say, cash notes. It is not like a case where a contractor is to furnish materials, and do the work and control the whole operation, and when finished and delivered to be paid for it.

"At every stage in the progress of this building, the structure was the property of Wilson, and the maxim, so controlling with regard to the manufacture of chattels of *res perit domino,* applies to him; he was the owner and the loss was his. See Story on Bailment, sections 426 and 438."

*Galyon & Co.* v. *Ketchen et al.,* 85 Tenn., 55, 1 S. W.,

508, relied upon by defendant, is not an authority to the contrary.

The editor of A. L. R., vol. 53, beginning on page 103, has annotated every phase of this question, and cited the cases setting forth the distinction between cases where the contractor is to furnish all labor and material and, when completed, turn same over to the owner, and cases where the contractor is only to do certain parts of the work in erecting the building. On page 116 the annotator states the following:

"The general rule is that if a contractor is to contribute only a part of the labor and materials toward the erection of a building, the owner or other independent contractors to do part of the work and furnish part of the materials, the contractor is discharged from his obligation by the destruction of the building before completion, and may recover on an implied *assumpsit* for the value of what he has already done."

As to the reason for the distinction, some of the cases hold that, where the contractor is to do only certain portions of the work, so far as he is concerned, the building in the course of erection is to be treated as the property of the owner of the land, and that, as the materials are wrought into the building, they become the property of the owner at once.

In other cases it is held that the distinction is between a contract to do work upon a thing that exists and a contract to create and bring into existence something for which the contractor is to be paid. Another theory is that a contract to do only a part of the work of erecting an entire structure is much like a contract to make repairs on a house.

The "turn-key job" rule is certainly inapplicable in

the instant cause, because complainants never had either ownership or control of this school building. Their ability to protect themselves by procuring insurance upon the particular part of the structure they were erecting is questionable.

The Court of Appeals further held that the plea of accord and satisfaction, interposed by defendant, was a bar to a recovery. In this the court was in error. When the building was finally completed, a controversy arose as to whether the loss, due to the fire, should be borne by complainants or defendant. Before the fire defendant had paid complainants $500 of the $960 called for in the contract. Upon final completion of the building, the county issued its warrant to complainants for $460, on which was written: ''Balance on Fishery brick veneering contract—for Fishery Elementary School.'' There was no controversy between the parties as to this item, and the county admitted its liability for that sum; hence the plea of accord and satisfaction was ineffective as to the liability of the county for extra work due to the fire. *Conrad* v. *Life & Accident Ins. Co.,* 141 Tenn. 14, 206 S. W., 34.

From the evidence in this cause we are satisfied that in the settlement referred to the parties did not intend to include the claim for extra work, but the sum paid was only in satisfaction of the original contract.

In *Lytle* v. *Clopton,* 149 Tenn., 655, 663, 664, 261 S. W., 664, 666, this court quoted approvingly from 1 Corpus Juris, 529, as follows:

''To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend

it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attenting the transaction.''

The officials would not pay for this extra work because they were in doubt as to whether the loss, due to the fire, was chargeable to complainants or defendant. They do not claim that the payment of $460 was intended to cover the extra work, or that complainants accepted it as such.

For the reasons stated herein, the decree of the Court of Appeals will be reversed, and that of the chancellor affirmed.