## QUALITY CARE NURSING SERVICES, INC., Plaintiff/Appellant,

v.

## C.B. COLEMAN, Defendant/Appellee.

Supreme Court of Tennessee, at Knoxville.

March 9, 1987.

Rehearing Denied April 14, 1987.

Harry Berke, Chattanooga, for plaintiff/appellant.

W. Frank Brown, Chattanooga, for defendant/appellee.

1. Underlining appeared on the face of the

## OPINION

HARBISON, Justice.

This is a suit upon a liquidated, undisputed account for services rendered. The debtor made a partial payment of less than one-third of the amount claimed, but marked his check "In full to date."[1] The check was mailed from Chattanooga to an office of appellant in Baltimore, Maryland, where it was received and cashed in due course. There is no evidence of any prior discussions between the parties or of any questions made by appellee as to the manner or course of billing or concerning the services rendered.

Both the Chancellor and the Court of Appeals held that, as a matter of law, the cashing of the check by the creditor with the foregoing legend on it conclusively established the affirmative defense of accord and satisfaction. Accordingly they dismissed the suit. We reverse and remand for entry of judgment for appellant.

Appellant is engaged in the supplying of nursing assistance to individuals in need thereof, including nurses' aides, licensed practical nurses and registered nurses. The wife of appellee became seriously ill with cancer. From February 11, 1983, through the date of her death on April 15, 1983, he utilized the services of nursing personnel supplied by appellant for the care of his wife.

Two written contracts were entered into between the parties. The first was dated February 18, 1983, in which it was agreed by appellee as follows:

"I ... understand your billing procedure consists of a time slip which is presented to me by your employee when his/her assignment is completed or at the end of each week, whichever comes first. (The billing week is from Saturday at 12:00 a.m. to Friday midnight.)

"I understand that at the end of each week your employee will ask me to sign a time slip setting forth the number of hours of service during that week, and that the amount of hours indicated on the

check.

signed time slip will form the basis of my invoice which you will forward weekly."

The following sentence stated the hourly rate for services rendered. The agreement further provided that payment for services was due upon receipt of an invoice and that interest would accrue thereon after thirty days. The agreement also provided for reasonable attorney's fees for costs of collection.

An identical instrument was executed by appellee on March 4, 1983, showing a higher hourly rate for services. This was explained in the record as being the result of a deterioration in the condition of Mrs. Coleman, requiring the services of more highly skilled personnel on a more extensive basis.

Appellant is a corporation engaged in business in many states, having some 165 offices throughout the United States. The principal office is situated in Rockefeller Center, New York, and all billings to customers were sent from that office. The office at the location where the services were rendered sent its billings to the central office at the end of each week, and these were then invoiced to the customer. Remittances, however, were made to the receiving office of appellant in Baltimore, Maryland. The customer was instructed on the invoices to mail them there, and such payments as appellee made were sent to that office. Appellee does not contend that he made any other or different payments, or that he did not understand the instructions on the invoices.

The services rendered by personnel employed by appellant extended over ten weeks, or parts thereof, with invoices having been sent weekly beginning on February 11, 1983, through April 15, 1983. Appellee does not deny receipt of these invoices, nor is there any dispute as to their accuracy or amount.[2]

Most of the original weekly time sheets or tickets submitted by nurses to appellant are in the record, and nearly all of them are either signed by him or initialled by him. In a few instances the initials or signatures of other persons appear, but we infer from the record that these were other family members or relatives who were authorized to sign for appellee. In all events no issue has been made concerning that point.

Appellee remitted on a sporadic basis and did not pay the invoices weekly as he had agreed to do. The first check which he sent to the Baltimore office of appellant was dated March 17, 1983 in the amount of $2,515.36. This was marked "In full to date" although in fact at that time the balance was over $5000. He sent another check on April 5, 1983 in the amount of $1958, marked "To date", although at that time the balance exceeded $8000. The amount remitted was the correct amount for an invoice covering the single week ended March 25, 1983.

The final payment made by appellee was on a check dated May 10, 1983 in the amount of $2,928.75, marked "In full to date", but at that time the balance due on the account was $9365.

The manager of the local office in Chattanooga wrote to appellee concerning his account on February 28, 1983, on April 5, 1983, on April 19, 1983 and on April 21, 1983. In each instance the amount then due and owing on the account was explained, and credit was given to appellee for each payment which he had made at the time the letter was sent.

There is no evidence that appellee replied to these letters orally or in writing, that he met with or discussed the matter with the local manager, or that he took any other action with respect to the weekly accruing invoices, except for making the payments above referred to.

Appellee testified that he was, of course, concerned about his wife's illness. He kept no records concerning his payments except the checks and apparently did not retain the weekly invoices. There is no evidence, however, that he remitted them to Baltimore with his checks. Indeed he testified that he customarily paid bills by checks and then threw the bills away. There is no

2. At trial, counsel for appellee at first thought that he had discovered a mathematical error in the billing, but this later proved not to have been the case.

evidence that he departed from this custom in his dealings with appellant.

Appellant sued for the unpaid balance together with interest and attorney's fees. Appellee interposed a general denial together with allegations of accord and satisfaction. The answer raised some issue as to the excessiveness of the charges, but this issue was apparently abandoned at trial. Both the trial court and the Court of Appeals found that the account was undisputed, and material evidence supports that concurrent finding. That matter is accordingly foreclosed here. *See* T.C.A. § 27-1-113.

Appellee does not dispute the legal proposition that the burden of proving by a preponderance of all the evidence rested on him to establish the affirmative defense of accord and satisfaction.

The Tennessee Rules of Civil Procedure respecting affirmative defenses provide:

"In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction ... and any other matter constituting an avoidance or affirmative defense." Rule 8.03.

The only facts stated in the defensive pleading of appellee were that he had paid a total of $7402.12 on the account over a three-month period, and that his checks had borne the legends previously quoted. It was alleged that these payments constituted payment in full and/or an accord and satisfaction of the debt claimed.

Appellee testified that it was his intention by the last check to cover all of the unpaid invoices. He did not, however, testify that the creditor was put upon notice, orally or otherwise, that it could accept the check only upon condition that it would be considered payment in full of the outstanding balance. The record contains no evidence that his last check, or any of the other checks, was accepted by appellant in full payment, or that appellant in any way intended to accept the three partial payments which were made in full settlement of the account. As stated previously, there is not even any evidence that the invoices

which appellee had received and which he obviously had in front of him at the time he wrote his checks, were mailed back to the creditor with the checks. The account was ongoing during the months of February, March and April, and there is no legal theory upon which the first two payments could have been deemed to be any more than partial payments upon receipt by the creditor.

The third payment is in a somewhat different status, in that the check was sent over three weeks after the last services were rendered. It was in the exact amount of invoices for the last two weeks, these being dated April 8, 1983, in the amount of $1862 and the other April 15, 1983 in the amount of $1066.75.

Since appellee offered no proof, by discovery or otherwise, as to the practices or procedures of the receiving office of appellant in Baltimore, or with respect to the intentions of the creditor upon receipt of these checks, he must rely solely on the facts pleaded in his answer and established by the proof to make out his defense of accord and satisfaction. That is, it is his position that when a creditor receives a check marked as payment in full and cashes that check, an accord and satisfaction is automatically and conclusively established, even though the account is liquidated and not disputed.

We do not so understand the rule, nor have Tennessee cases generally so held, in the absence of a showing of some previous dispute between the parties or some agreement respecting a compromise.

The general law is well stated in a leading authority, as follows:

"It is not enough for the debtor merely to write on a voucher or on his check such words as 'in full payment' or 'to balance account' where there has been no such dispute or antecedent discussion as to give reasonable notice to the creditor that the check is being tendered as full satisfaction. Such an indorsement on the check is merely an evidential fact, to be weighed along with other facts. In case there is no other evidence of an

offer of accord, the creditor may strike out the writing on the check; or he may cash the check without doing so." 6 *Corbin on Contracts,* § 1277 (1951).

At common law a check labeled "payment in full" was not deemed sufficient to discharge the underlying obligation of a liquidated or undisputed claim.[3] In many states this is still the rule. *See generally Annot.,* 42 A.L.R.4th 12 (1985).

Tennessee, however, has long had statutes which abrogate this rule with respect to written releases or settlements, because the common law rule prohibiting such settlements or compromises of undisputed claims was unrealistic and contrary to business practices. There is authority that the state still follows the common law rule with respect to oral releases and requires additional consideration in such cases to discharge the underlying debt. *See Winer v. Williams,* 165 Tenn. 190, 54 S.W.2d 723 (1932); *Miller v. Fox,* 111 Tenn. 336, 76 S.W. 893 (1903). There has been some departure from that rule where the oral agreement has been fully executed. *See Haun v. Corkland,* 55 Tenn.App. 292, 399 S.W.2d 518 (1965).

In the present case, the debt was undisputed and the check purporting to discharge it was in writing.

T.C.A. § 24–7–106, at the time of the contract and dealings between these parties, provided as follows:

"All receipts, releases and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto."

T.C.A. § 24–7–107 provided:

"All settlements in writing, made in good faith for the composition of debts, shall be taken as evidence, and held to operate according to the intention of the parties, although no release under seal is given, and no new consideration has passed."

3. The common law rule derived from the decisions in *Pinnel's Case,* 5 Coke 117a (1602) and

Under these statutes, the common law requirement of consideration has no application to a written settlement agreement. If a written instrument stating an intention to discharge a debt is properly accepted by a creditor, the debt is then discharged whether it is disputed or not. *See Cole v. Henderson,* 61 Tenn.App. 390, 454 S.W.2d 374 (1969).

Great reliance is placed on the *Cole* case, *supra,* by appellee, and the case was deemed dispositive by the courts below. In that case, however, there was only a single item involved, a real estate commission. The parties allegedly had agreed to an equal division of the commission. The debtor sent the creditor a check for only one-half the amount which the creditor claimed, however, marked as payment in full. There was a sharp dispute between the parties as to whether this was the proper amount. Upon receiving the check, the creditor attempted to contact the debtor, and four days later he discussed the matter with him, claiming that an additional amount was owing. The debtor told the creditor that he did not owe anything and that he was not going to pay any more than the amount of the check. Subsequent negotiations between the parties failed, and only then did the creditor cash the check and file suit for the balance. It was under those circumstances that the Court of Appeals held that the cashing of the check consummated an accord and satisfaction.

The facts in the present case are wholly different, and we do not believe that it accords with current business practices and dealings, especially in the present age of data processing and computer billing, to hold, as appellee insists, that the mere receipt and cashing of a check marked as payment in full conclusively establishes an accord and satisfaction. Something more is required.

In the leading case of *Inland Equipment Co. v. Tennessee Foundry & Machine Co.,* 192 Tenn. 548, 552, 241 S.W.2d

*Foakes v. Beer,* 9 App.Cas. 605 (1884).

564, 565–66 (1951), this Court, quoting from other authority, said:

> " 'The party who pleads, claims, asserts, or relies on, an accord and satisfaction has the burden of proving it. Thus, where defendant pleads or relies on accord and satisfaction as a defense, he has the burden of establishing it by proof of every element thereof; and the rule applies even though a reply denies that the terms of the accord were as stated in the answer and that it was executed. Applying the general rule above stated, defendant, where he relies on an accord and satisfaction as a defense, has the burden of proving the material allegations of his plea, an accord or new agreement, inclusion of the item or items of indebtedness in the action or suit, satisfaction by performance of the agreement or the agreement itself, that the payment was offered on the condition that, if accepted, it would be in full settlement of the demand, and that the creditor understood the conditions of the tender, or the circumstances under which it was made were such that he was bound to understand, an acceptance by plaintiff in full satisfaction of his demand.' "

In *Helms and Willis v. Unicoi County,* 166 Tenn. 639, 645–46, 64 S.W.2d 200, 202 (1933) the Court said:

> "From the evidence in this cause we are satisfied that in the settlement referred to the parties did not intend to include the claim for extra work, but the sum paid was only in satisfaction of the original contract.
>
> "In *Lytle v. Clopton,* 149 Tenn., 655, 663, 664, 261 S.W. 644, 666, this court quoted approvingly from 1 Corpus Juris, 529, as follows"
>
> " 'To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.' "

*See also Rhea v. Marko Construction Co.,* 652 S.W.2d 332, 334 (Tenn.1983); 1 Am.Jr.2d, *Accord and Satisfaction* §§ 18, 19 (1962).

The rule of accord and satisfaction may apply either to disputed or to undisputed debts. If the parties agree to a compromise and settlement in writing, under Tennessee statutes their agreement will be effective without the passing of any additional consideration.

An agreement, however, by definition, requires consent of both parties, express or implied. We have previously stated that there has been no evidence offered in this case that the creditor ever understood or agreed that this debt was in dispute and that it was to be compromised, or that the creditor ever agreed to take a lesser sum in payment of the full amount. It would be unrealistic in the modern business world for a debtor to send an installment payment to a creditor, which may be receiving hundreds or thousands of such checks, and to have the balance of his debt deemed discharged as a matter of law simply because of a legend the debtor placed thereon, absent any other proof of a compromise or settlement.

Our research reveals that authorities in other states have not deemed the rule regarding accord and satisfaction as automatic as suggested by appellee. In the case of *Mademoiselle Fashions Inc. v. Buccaneer Sportswear, Inc.,* 11 Ark.App. 158, 668 S.W.2d 45 (1984), the creditor, Buccaneer Sportswear, Inc., billed the debtor for merchandise sold under a series of invoices. A check was sent by the debtor in the amount of $11,520 bearing the legend "Invoices # 6832–6833 & 6508. This represents any and all debit paid in full."

The check actually covered only the amount of Invoice # 6832. When the credi-

tor sued for the amount of the remaining invoices, the debtor raised a defense of accord and satisfaction. The Court stated that the language on the check would not place the creditor on notice that acceptance of the check would be satisfaction of the entire debt. The Court said:

"Rather we feel that the employee of the appellee who received this check would naturally consider this check as payment for invoice number 6832, as there was no knowledge of a dispute as to other amounts owing upon the appellant's account and the employee's act of accepting the check and depositing it, cannot be said to constitute an acceptance as full satisfaction of the debt owed by the appellant to the appellee." 668 S.W.2d at 47.

In the present case the amount of appellee's last payment was for the exact total of the last two invoices rendered to him. A clerk receiving this check and comparing it with the office copies of the invoices would have no reason to question the accuracy of the notation on the check with respect to those two invoices. Under the facts of this case, however, in our opinion the acceptance of the check did not, in and of itself, constitute an accord and satisfaction. The sending of the check with the legend thereon might be some evidence of the debtor's intention, but it is far from persuasive evidence with respect to the creditor's intention or understanding.

For similar cases from other states *see Butch Levy Plumbing and Heating, Inc. v. Sallblad,* 267 Minn. 283, 126 N.W.2d 380 (1964); *Kramas v. Beattie,* 107 N.H. 321, 221 A.2d 236 (1966). In the latter case the Court said:

"... [I]t cannot be said as a matter of law that the plaintiff by cashing the check accepted it in full payment of his account." 221 A.2d at 238.

By 1983 Tennessee Public Acts, Ch. 456, one of the Tennessee statutes above referred to was amended, and the revised statute, as codified in T.C.A. § 24-7-106, reads as follows:

"All receipts, releases and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto; provided, however, the remittance and acceptance of a check or other instrument bearing on its face words that it is payment or satisfaction in full of a debt or obligation, shall not be considered conclusive evidence of an intention that the debt or obligation for which the same is given be discharged or released, provided that the remittee of such instrument tenders back to the remittor the funds represented by such instrument."

This amendment did not become effective until after the close of dealings between the parties to this action. At the time their contract was made and at the time of the remittances received, this statute had not been enacted, and the procedures which it prescribes were not mandatory.

The action of the General Assembly in enacting this statute, however, in our opinion, reinforces the intention of the Legislature that the two Tennessee statutes referred to earlier in this opinion were not designed to trap an unwary creditor, even though their original intent and purpose was to prevent a creditor from taking an unconscionable advantage of a debtor. The new statute itself recognizes that there is nothing automatic or "conclusive" about a legend written on an instrument, and the original statutes stressed the necessity for examination of the intention of the parties and their good faith.

In our opinion appellee introduced insufficient evidence at trial to establish the affirmative defense of accord and satisfaction. No other defense being interposed, it results that appellant is entitled to judgment for the unpaid balance of the account, together with interest and attorneys' fees. The cause is remanded to the trial court for determination of the amount due. All costs are taxed to appellee.

FONES and DROWOTA, JJ., and LADD and COLE, Special Judges, concur.