IN THE COURT OF APPEALS

FILED

**March 4, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

DONNA JUNE ARCHER and JAMES )  HAWKINS CIRCUIT
DAVID ARCHER, Individually and )  C. A. NO. 03A01-9511-CV-00417
as Administrators of the Estate )
of VERNA LEE ARCHER, )
)
        Plaintiffs-Appellants )
)
)
)
)
)
vs. )  HON. JOHN K. WILSON
)  JUDGE
)
)
)
)
)
BURTON PLAZA ASSOCIATES, LTD., )  AFFIRMED AND REMANDED
and AMERICAN MANAGEMENT COMPANY, )
INC., )
)
        Defendants-Appellees )

WILLIAM E. PHILLIPS, Phillips and Hale, Rogersville, for Appel-
lants.

TRACEY SHAW, Howell and Fisher, Nashville, for Appellees.

O P I N I O N

McMurray, J.

This is an action for wrongful death. The plaintiffs seek to recover damages from the owners and operators of the Burton Plaza Apartments complex in Rogersville. The plaintiffs assert that the defendants were negligent in failing to provide proper security and protection for the occupants of the apartments. Specifically, they assert that the outside hallway doors of the apartment building were never locked. The plaintiffs also sue on the theory of breach of contract.

The plaintiffs' decedent was murdered by a third party inside the laundry room of the apartment building in which the decedent lived. The trial court dismissed the case, with prejudice, on defendants' motion for summary judgment.[1] We affirm the judgment of the trial court.

The defendants' motion for summary judgment was based upon the grounds that there is no dispute as to any material fact, there-fore, the defendants are entitled to judgment as a matter of law. In support of their motion for summary judgment, the defendants

---

[1]The order dismissing the case provides as follows: "It is therefore ORDERED AND ADJUDGED that this action is dismissed on the merits with prejudice, and the costs of this cause shall be taxed to the plaintiffs, **and the plaintiff may submit law on the contractual aspect to see if the court needs to review that area, only.**" The emphasized part of the above order was a handwritten notation made by the trial court. We view this as an invitation for the plaintiffs to file a motion to reconsider or other similar motion, along with a brief of law in the event they chose to do so. Since the record is silent concerning any further action of the part of the plaintiffs, other than this appeal, we are of the opinion and hold that the plaintiffs elected not to pursue the matter further in the trial court, hence, the above order is final and appealable as of right.

filed the affidavits of Imogene Trent, Patty Ownby, Larry Lawson and Robert M. Reeves, as well as the depositions of Donna Archer and James David Archer.

The plaintiffs in opposition to the motion for summary judgment rely upon the depositions of Imogene Trent, Hazel Mayes, Donna June Archer and James David Archer.

The plaintiffs present the following issues for our review:

1.  Did the trial court err in determining that, as a matter of law, the defendants were entitled to summary judgment as to the negligence count of the plaintiffs' cause of action?

2.  Did the trial court err in determining that, as a matter of law, the defendants were entitled to summary judgment as to the breach of contract count of the plaintiffs' cause of action?

## STANDARD OF REVIEW

Our standards of review in considering the propriety of summary judgment is as follows:

> The standards governing an appellate court's review of a trial court's action on a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. <u>Cowden</u>

3

v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991). Tenn. R. Civ. P. 56.03 provides that summary judgment is only appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, Byrd v. Hall [v. Hall], 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as matter of law on the undisputed facts. Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn. 1991).

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. Byrd, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion. Id.

Carvell v. Bottoms, 900 S.W.2d 23 (Tenn. 1995).

## DISCUSSION

## The Contract Issue

We will first discuss the contract issue. The provisions of the contract relied upon by the plaintiffs are found in the lease agreement between the decedent and the defendants. The specific provisions upon which the plaintiffs rely are found in Section eleven of the lease agreement:

**Section 11. Maintenance**:

4

**a.** The Landlord agrees to:

(1) regularly clean all common areas of the project;

**(2) maintain the common areas and facilities in a safe condition;** (Emphasis added).

(3) arrange for collection and removal of trash and garbage;

(4) maintain all equipment and appliances in safe and working order;

(5) make the necessary repairs with reasonable promptness;

(6) maintain exterior lighting in good working order;

(7) provide extermination services, as necessary; and

(8) maintain grounds and shrubs.

The plaintiffs urge us to find that a duty existed under the above section and subsections of the lease agreement to protect the lessee against injury caused by criminal acts of third parties. The resolution of this issue requires an interpretation of the contract.

The cardinal rule for interpretation of a contract is to ascertain the intention of the parties from a consideration of the instrument as a whole. Bob Pearsall Motors v. Regal Chrysler Plymouth, 521 S.W.2d 578, 580 (Tenn. 1975); APAC-Tennessee, Inc. v. J.M. Humphries Const. Co., 732 S.W.2d 601, 604 (Tenn. App.

5

1986); Rodgers v. Southern Newspapers, Inc., 214 Tenn. 335, 379 S.W.2d 797 (1964). In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning and neither party is to be favored in their construction. Brown v. Tennessee Auto. Ins. Co., 192 Tenn. 60, 237 S.W.2d 553, 554 (1951); Ballard v. North American Life & Casualty Co., 667 S.W.2d 79, 83 (Tenn. App. 1983). Otherwise stated, the language used must be taken and understood in its plain, ordinary and popular sense. Guardian Life Ins. Co. V. Richardson, 129 S.W.2d 1107 (Tenn. App 1939).

Applying the above rules to the contract provisions at hand, we find that the intentions of the parties are clear. We are of the opinion that, in proper context, the terms "maintenance" and "maintain the common areas and facilities in a safe condition" are limited to maintaining the property so that the common areas and facilities are free from physical defects. We find that under the terms of the contract, the parties did not contemplate protection of the occupants from harm by third persons. Accordingly, we are of the opinion that the trial court was correct in sustaining the motion for summary judgment on the breach of contract issue.

## The Tort Issue

The record reflects that the following facts are totally undisputed:

Burton Plaza Apartments is an apartment complex consisting of approximatey three separate apartment buildings. Each building contains multiple apartments. Access to the individual apartments is from a common exterior door or doors which lead into a common hallway. The exterior door of the common area is equipped with a lock requiring a key (if locked) to obtain entrance and a push-bar to exit the building. None of the tenants were furnished keys to the exterior door of the common entrance. The common exterior doors were never locked.

The individual apartments each have an exterior door which leads into the common area of the apartment building. The exterior door of each apartment is an exterior type fire door, equipped with a deadbolt lock, a peephole and a doorbell.

The apartments were designed for aged or infirm persons and in addition to the safety features of the individual apartments doors, each apartment also had an emergency "pull cord" in the bathroom and bedroom

7

The decedent, Ms. Verna Lee Archer, was a resident of one of the apartments. One Johnny W. Bryant entered the apartment building in which Ms. Archer was living. He gained access through the common unlocked exterior door into the common area hallway and knocked on several doors. Apparently, the decedent admitted Mr. Bryant to her apartment after which Mr. Bryant lured or forcibly took her from her apartment to a laundry room in the building. There was no evidence of a struggle or other disturbance inside the apartment of Ms. Archer. There were signs of a struggle in the laundry room, i.e., blood, broken glass and scuff marks.

The Rogersville Police Department received a call shortly after 9:00 p.m. from Ms. Susan Cole, another resident of the apartment building. Ms. Cole reported that a man was in the upstairs laundry room and a woman was calling for help. The Rogersville police responded immediately. The decedent was the only resident of the building that could not be accounted for. After a search in and around the apartment building, the body of Ms. Archer was discovered some fifty (50) feet from the corner of the building in which she resided.

The following day Johnny Bryant was arrested and charged with homicide and attempt to commit rape. Subsequently, he pled guilty to these charges and was convicted of one count of First Degree Murder and one count of Criminal Attempt to Commit Rape.

8

Ms. Imogene Trent, Manager of Burton Plaza Apartments, deposed in her affidavit that she had been manager of the apartment complex since 1981 and at no time did she ever receive any complaints that the tenants had concerns for their safety because the exterior doors were unlocked. She further stated that she was not aware of any acts which occurred at Burton Plaza Apartments that posed a probability of harm to any of the residents of the apartment complex. The affidavit of Patty Ownby, president of American Apartment Management Company, Inc., generally reiterated the statements of Ms. Trent.

Larry Lawson, Chief of Police of the Rogersville Police Department, stated by affidavit that he had been employed with the police department since 1987; that he was personally familiar with the location of the Burton Plaza Apartment and the level of criminal activity in Rogersville; and, that before the death of Ms. Archer on January 29, 1994, he was not aware of any criminal activity or any complaints concerning safety measures at Burton Plaza Apartments. He further stated that he was not aware of any acts or omissions which made the murder of Ms. Archer foreseeable to the police department.

Robert M. Reeves, Deputy Director of the Tennessee Bureau of Investigation stated by affidavit that the T.B.I. investigated Ms. Archer's death pursuant to a written request from the District

9

Attorney General, Mr. Berkler Bell. Mr. Reeves affidavit corroborated facts previously stated.

The only charge of negligence averred in the plaintiffs' complaint is that the defendants failed to lock the outside common doors of the apartment building. There is no allegations that there had been any criminal activity in or around the apartment complex. The record is devoid of any evidence of criminal activity except for the theft of a linen table which apparently was stolen when the apartments were first opened for occupancy.

From the above facts, we must make a determination if the defendants' failed in any duty owed to the plaintiffs' decedent.

An excellent historical discussion of a landlord's liability is found in Cornpropst v. Sloan, 528 S.W.2d 188 (Tenn. 1975). In Cornpropst, the question on appeal was whether the complaint stated a cause of action against merchants who are members of a shopping center association, for personal injuries to an invitee resulting from a sudden criminal assault by a third party, on a shopping center parking lot. The court stated:

> We are not called upon, in this case, to draft a rule applicable to all of the many types of business and entertainment and service establishments or of every premises liability, or special relationship situation

wherein a duty of protection of invitees might be asserted, and we do not propose to do so.

In our opinion the appropriate rule applicable to this case is as follows: There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.

In our view, there is no discernible reason why the same rule should not apply to the facts under consideration here. Under the undisputed facts of this case, the premises did not attract or provide a climate for crime. Further, the defendants had no reason to know that criminal acts were occurring or about to occur on the premises that posed an imminent probability of harm to the occupants of the apartment complex.

Since Cornpropst, perhaps the leading case most similar to the facts under consideration here is Tedder v. Raskin, 728 S.W.2d 343 (Tenn. App. 1987). In Tedder, the court was dealing with a situation directly involving a landlord and a tenant in an apartment building. One of the tenants was injured when struck by a bullet which came through the wall from an adjoining apartment. As in Cornpropst, the court went into great detail to explain the evolution of the common law. Tedder recognized that there were no

11

reported cases on the landlord's liability for injuries resulting from criminal acts of third parties on the leased premises.

The court in dictum noted some areas in which liability could be imposed upon the landlord.  The court noted:

> Of particular interest here is the imposition of a duty on landlords of apartment buildings, and liability for negligent breach of that duty, to take reasonable precautions to protect their tenants from criminal acts of third parties on the leased premises. Since the landlord retains control over the common areas of the apartment building and grounds, the landlord is in a far superior position to take step necessary to secure the premises for the safety of the tenants. Like guests at inns, tenants in multiple-apartment buildings whose leases are often of short duration cannot be expected individually to make the expenditures necessary to secure the common areas of the building, for example by installing locks on outside entrances, providing adequate lighting in hallways, and taking similar precautions. The landlord, on the other hand, is in a better position to provide reasonable security and spread the cost among the tenants. The imposition by law of a duty on the landlord to take reasonable steps to secure the leased premises for the safety of the tenants was thus merely a logical extension of the existing common law governing the special relationship of innkeeper-guest.

While it appears in Tedder, arguendo at least, that the court proposed to adopt a rule of law whereby plaintiffs could maintain an action for an injury by a third person in a common area, where an outside entrance was not locked, the rule was not unrestricted. Tedder noted that the standard adopted, i.e., due care under the

12

circumstances, must be resolved on a case by case basis.[2] The plaintiff is still required to establish that the injury was reasonably foreseeable, else "the criminal act of the third party would be a superseding, intervening cause of the harm, relieving the landlord of liability." Tedder, at page 349.

In determining whether a injury was foreseeable, it becomes necessary to address the concept of notice. "We do not perceive this extension of the common law as placing an undue burden on landlords. As in other negligence actions, the plaintiff will have to prove that the landlord was on notice of an unreasonable risk or likelihood of danger to his tenants caused by a condition within his control. Once notice sufficient to cause a reasonably prudent person to foresee the probability of harm is received, the duty to act arises and the failure to take reasonable steps to correct the problem within a reasonable time is a breach of that duty." Tedder, page 348.

Under the undisputed facts and circumstances, the defendants here had no notice that would cause a reasonably prudent person to foresee that the criminal act of a third person would result in an injury to one of its tenants, especially in view of the security

---

[2]We believe that the provisions for the security of the individual apartments were sufficient, under the facts of this case, to demonstrate that the defendants had, in fact, exercised due care under the circumstances.

13

measures provided at the entrance to each individual apartment. "We hold that if the owner is to be held liable for the sudden criminal acts of third persons there must be a showing that the owner was on notice in some manner of the imminent probability of the act. Otherwise, there can be no issue for jury determination. There is no such showing in this record. ... ." Doe v. Linder Constr. Co., 845 S.W.2d 173 (Tenn. 1992), citing Cornpropst, Supra, at 192 and Corbitt v. Ringley-Crockett, Inc., 496 S.W.2d 914 (Tenn. App. 1973).

Ordinarily, the proximate cause of an injury is for the jury, but, where the facts are not controverted, the question of proximate or intervening cause is for the trial court. Brodie v. Miller, 143 S.W.2d 1042, 1045 (Tenn. App. 1940) (citing Southeastern Greyhound Lines v. Groves, 136 S.W.2d 512, 513 (Tenn. 1940)). Doe v. Linder Constr. Co., supra.

In our view, it is unreasonable to require a landlord to provide a locked exterior door from a common area to the outside when each individual apartment is equipped with a door suitable for exterior use. To so require would appear to put landlords at risk who let apartments in buildings which have direct access from the outside. A landlord is not an insurer of his tenant. Simply stated, "one door is enough."

14

From the undisputed facts before the court, we are of the opinion that the defendants' motion for summary judgment was appropriate. There is no genuine issue of a matter of fact and the defendants are entitled to judgment as a matter of law.

The trial court is affirmed in all respects. Costs are taxed to the appellants and this case is remanded to the trial court for the collection thereof.

_____
Don T. McMurray, J.

CONCUR:

_____
Herschel P. Franks, J.

_____
Clifford E. Sanders, Senior Judge

15

IN THE COURT OF APPEALS

| | | |
|---|---|---|
| DONNA JUNE ARCHER and JAMES | ) | HAWKINS CIRCUIT |
| DAVID ARCHER, Individually and | ) | C.A. NO. 03A01-9511-CV-00417 |
| as Administrators of the Estate | ) | |
| of VERNA LEE ARCHER, | ) | |
| | ) | |
| Plaintiffs-Appellants | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | HON. JOHN K. WILSON |
| | ) | JUDGE |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| BURTON PLAZA ASSOCIATES, LTD., | ) | AFFIRMED AND REMANDED |
| and AMERICAN MANAGEMENT COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Defendants-Appellees | ) | |

## ORDER

This appeal came on to be heard upon the record from the Circuit Court of Hawkins County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was no reversible error in the trial court.

The trial court is affirmed in all respects. Costs are taxed to the appellants and this case is remanded to the trial court for the collection thereof.

PER CURIAM