# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 21, 2008 Session

## TETRA TECH, INC. v. PERFORMA ENTERTAINMENT REAL ESTATE, INC.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002235-05     Karen R. Williams, Judge**

---

**No. W2007-02244-COA-R3-CV - Filed October 3, 2008**

---

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Jeffrey A. Land, Germantown, Tennessee, for the Appellant, Tetra Tech, Inc.

Robert L. J. Spence, Jr. And Bryan Matthew Meredith, Memphis, Tennessee, for the appellee, Performa Entertainment Real Estate, Inc.

## OPINION

This is a contract action wherein the parties dispute which of two versions of a professional services agreement is controlling. The trial court determined that the contract/counter-offer proffered by Defendant buyer was the contract between the parties, and that there had been accord and satisfaction when Plaintiff deposited Defendant's check for the payment amount asserted by Defendant. We reverse the trial court's finding of accord and satisfaction. We further hold that the contract found by the trial court to be the applicable contract is unenforceable where the contract price is indefinite and where there was a lack of mutual assent to essential terms. We hold Plaintiff is entitled to recover in quantum meruit for services rendered and remand for further proceedings to determine that amount.

### *Background*

Plaintiff/Appellant Tetra Tech, Inc., ("Tetra Tech") is a publicly traded Delaware corporation that provides consulting, engineering and technical services. Defendant/Appellee Performa Entertainment Real Estate, Inc. ("Performa") is a Tennessee corporation located on Beale Street in Memphis. Performa manages and leases real property on Beale Street. Following oral negotiations,

on July 20, 2004, Tetra Tech sent its "Standard Agreement For Professional Services" to Performa by fax. The agreement was for the design of compactor enclosures at three Beale Street locations along Beale Street Alley between Third Street and Fourth Street. This project was part of a large Beale Street improvement project which included the participation of the Center City Commission, and was one of several projects for which Tetra Tech provided services.

The agreement faxed by Tetra Tech on July 20 recited a "Lump Sum Fee of $17,000 plus reimbursable expenses" per an attached proposal breakdown. The contract also included and referenced Attachment B-Proposal Breakdown for the scope of the services to be provided, and recited that services would be performed in accordance with Attachment A, the terms and conditions.[1] It also provided: "This Agreement supersedes all prior agreements and understandings and may only be changed by written amendment executed by both parties." The signature lines were located immediately following this provision. In addition to describing the scope of work, Attachment B reiterated the lump sum fee of $17,000 and provided:

> Per verbal agreement, Performa will pay a minimum of 10% of the construction cost upon receipt of invoice and has committed to securing funding to pay the remainder of the total fee. Tetra Tech recognizes that there may be some delay in receiving the balance of the fee and will allow a grace period not exceeding 60 days.

> Fees will be invoiced monthly based upon the percentage of services completed as of the invoice date. Payment will be due within 30 days of the date of the invoice. Outstanding balances of 30 days or more will accrue interest at 1.0% per month (12% per annum).

Tetra Tech's July 20 fax also included a budget estimate for enclosures at three locations and a cover letter from its senior project manager, Adam Brown (Mr. Brown). Mr. Brown's letter stated, in relevant part:

> Please find a Professional Services Agreement ready for execution - please sign and return a copy. Language has been added to the Attachment B under "Fees and Billing" in consideration of our discussion regarding Performa's commitment to pay a portion of the fees and secure funds from other sources for the remainder.

Performa's President, John Elkington (Mr. Elkington), signed the first page of the contract on July 21, 2004, and Performa faxed it to Tetra Tech on July 22, 2004. According to Tetra Tech, it received only this one-page agreement via Performa's return fax. Performa, however, asserts it faxed four pages to Tetra Tech: the agreement, Attachment A, a modified version of Attachment B, and Mr. Brown's cover letter.

---

[1]Attachment A includes a choice of law clause stating that Tennessee law governs any claims relating to the agreement.

Tetra Tech completed the design work in July 2004. Apparently, at some point Performa hired a contractor to perform some portion of the contracted work, and the parties agreed that final contract amount would be reduced to $14,048.42. In August 2004, Tetra Tech mailed Performa an invoice in the amount of $14,048.42 for services rendered through July 31, 2004. No payment was received from Performa, and a dispute arose regarding whether Performa was the "real party" to the contract and whether the contract had been "marked-up."

In December 2004, Mr. Elkington advised counsel for Tetra Tech by letter that Performa had never agreed to pay Tetra Tech $17,000. According to Mr. Elkington, Performa had agreed to pay $3,500 and to "help them secure the balance of what they were owed from the Center City Commission." Mr. Elkington attached a copy of the agreement for services with a modified version of Attachment B to his letter. The modified Attachment B consisted of a retyped attachment containing a modified "Fee & Billing" provision. The provision, like the signed first page of the agreement, recited a "lump sum fee" in the amount of $17,000. However, the modified typed section provided:

> Per our agreement, Performa will pay a minimum of 10% of the construction cost for the three enclosures only upon receipt of invoice and has committed to help try to secure funding to pay the remainder of the total fee. Tetra Tech recognizes that there may be some delay in receiving the balance of the fee and will allow a grace period not exceeding 60 days.

> Fees will be invoiced monthly based upon the percentage of services completed as of the invoice date. Payment will be due within 30 days of the date of invoice. Outstanding balances of 30 days or more will accrue Interest at 1.0% per month (12% per annum).

The section also included an undated handwritten notation, initialed by Mr. Elkington, stating:

> Performa agrees to pay Tetra Tech $3,500 toward their bill and use their best efforts to get the rest from the CCC.

In January 2005, Tetra Tech advised Mr. Elkington by letter that it would begin to pursue collection options if the balance amount of $14,048.42, plus interest in the amount of $561.94, was not received by January 28, 2005. In February 2005, Performa sent Tetra Tech a check for payment in the amount of $3,500. The check included a notation that it was for full payment. The check was negotiated by Tetra Tech on February 22. On March 10, Tetra Tech sent a letter to Performa acknowledging "partial payment" and seeking an outstanding balance in the amount of $10,548.42, plus interest. Performa asserted accord and satisfaction based on the negotiation of its February payment, and in December 2005 Tetra Tech refunded Performa by cashier's check in the amount of $3,500. Tetra Tech continued to demand full payment. Performa apparently returned the cashier's check to Tetra Tech.

In April 2005, Tetra Tech filed a complaint against Performa in the Circuit Court for Shelby County. In its complaint, Tetra Tech sought damages for breach of contract or, in the alternative,

for recovery in quantum meruit. Tetra Tech attached the first page of the agreement for services signed by Mr. Elkington to its complaint. It also attached the versions of Attachments A and B that it had faxed to Performa on July 20, 2004.

In its answer, Performa denied that the version of the contract attached to Tetra Tech's complaint was a true copy of the contract between the parties. Performa asserted that the true contract was the contract attached to its answer, which included modifications to Attachment B. It asserted that Tetra Tech's claim should be dismissed on the basis of accord and satisfaction where Tetra Tech had accepted its tender of $3,500 as payment in full. Performa further asserted Tetra Tech's claims were barred by the doctrines of laches and equitable estoppel, and that its claim under the doctrine of quantum meruit should be dismissed where Tetra Tech "may recover from other unnamed third parties and has failed to exhaust its remedies against said parties."

In October 2005, Tetra Tech moved to amend its complaint to add Mr. Elkington as a Defendant. In its motion, Tetra Tech asserted Mr. Elkington had "attached a fraudulently altered contract to [Performa's] Answer" to its complaint. Tetra Tech asserted that, in its December 2004 letter to counsel for Tetra Tech, Performa had "fraudulently and deceptively stated" that the copy of the contract "attached to his letter was a copy of the original contract document executed by him on behalf of Performa." Tetra Tech asserted the "fraudulent and unilateral change was made well after the contract was executed, and well after work was performed." Tetra Tech further asserted Mr. Elkington was attempting to perpetrate a fraud on the court, and sought punitive damages in the amount of $100,000.

Performa opposed Tetra Tech's motion to amend, and the trial court denied the motion in January 2006, and again in March 2007. In January 2007, the trial court also denied Performa's November 2006 motion for summary judgement. The matter was heard by the trial court in August 2007. The trial court entered judgment in favor of Performa in September 2007, and Tetra Tech filed a timely notice of appeal to this Court.

### *Issues Presented*

Tetra Tech presents five issues for our review. Succinctly stated, the issues raised by Tetra Tech are:

(1) Whether the trial court erred by finding that the version of the contract proffered by Performa contained the agreement of the parties.

(2) Whether the trial court erred by denying Tetra Tech's motion to amend its complaint to assert a cause of action against John Elkington for fraud.

(3) Whether the trial court erred by finding their had been accord and satisfaction between the parties.

### *Standard of Review*

We review the trial court's findings of fact *de novo* on the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Thus, we may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). However, if the trial court fails to make findings of fact, our review is *de novo* with no presumption of correctness. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995). We review a trial court's determinations on matters of witness credibility with great deference and will not re-evaluate a trial judge's credibility determinations unless they are contradicted by clear and convincing evidence. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The interpretation of a contract, or the "ascertainment of the intention of the parties to a contract," is a question of law which we review *de novo*. *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).

### *Analysis*

The proceedings in the trial court included substantial debate regarding whether Performa sent and Tetra Tech received four pages by fax on July 22, 2004, including Attachment B as modified by Performa. The trial court found that the "fax line," the imprint made on the agreement faxed by Performa to Tetra Tech, indicated that Tetra Tech received four pages via fax transmittal. Upon review of the record, we agree that the first page of the agreement appears to indicate that it was the fourth page transmitted. The trial court also found that the agreement purported to be the true agreement between the parties was the agreement submitted by Performa. Because there is nothing in the exhibits included in this record to definitively indicate whether Tetra Tech in fact received the modified version of Attachment B, the resolution of this matter required a credibility determination with respect to whether Performa's fax to Tetra Tech included the modified Attachment. The trial court found Trial Exhibit 9, the version of the contract submitted by Performa, to be the final version of the contract between the parties. Because the evidence does not preponderate against the trial court's finding that Performa included the modified version of Attachment B in it July 22, 2004, fax to Tetra Tech, and where Tetra Tech performed under the contract, we affirm the trial court's determination that the modified Attachment B is part of the written contract. However, upon review of the entire record, it is clear to us that the parties perceived Performa's obligation regarding payment to Tetra Tech differently. We thus turn to whether the contract proffered by Performa and found by the trial court to be the contract between the parties is enforceable.

### *Enforceability of the Contract*

It is well-established that a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy, and sufficiently definite to be enforced." *HCA Health Servs.*, 46 S.W.3d at 196 (citations omitted). A contract may not be enforceable where an essential element, such as price or compensation terms, is determined to be indefinite. *Id.* Further, a contract

must be sufficiently explicit so as to enable a court to determine the respective obligations of each party. *Id.* An inexplicit contract price, or the recitation of a "reasonable price," does not render a contract unenforceable because of indefiniteness "[i]f the parties provide a practicable method for determining [the] price or compensation." *Id.* (quoting 1 Joseph M. Perillo, *Corbin on Contracts*, § 4.3, at 567-68 (Rev. ed. 1993)). Additionally, in the absence of a signature, manifestations of assent, including a party's actions or inactions, may demonstrate an intent to be bound. *Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 676 (Tenn. Ct. App. 2007)(citations omitted). The existence of an enforceable contract resulting from a "meeting of the minds" is to be determined not only by the words used, but in light of the parties' acts, conduct, and the entirety of the circumstances. *Id.* at 675.

Where the court determines a contract is unenforceable, it may prevent unjust enrichment by permitting recovery in quantum meruit. *HCA Health Servs.*, 46 S.W.3d at 197. Quantum meruit is an equitable recovery by which a party may recover the reasonable value of the goods or services it provided. *Id.* Recovery in quantum meruit may be awarded where (1) there is no enforceable contract covering the subject matter; (2) the party seeking to recover proves that it has provided the goods or services; (3) the party being charged has received those goods or services; (4) under the circumstances, the parties reasonably should have understood that the party providing the goods or services expected compensation; and (5) it would be unjust to permit a party to retain the goods or services without payment. *Id.* at 198.

In this case, the compactor enclosure project was a minor element in a large Beale Street improvement project that also involved the Center City Commission. Mr. Brown's July 20, 2004, cover letter to Performa, which was faxed to Performa along with the services agreement, clearly evidences that Performa had "commit[ed] to pay a portion of the fees." It also indicates Mr. Brown's understanding that Performa would "secure funds" for the balance from "other sources." Thus, it is clear that Tetra Tech was aware, from the outset, that Performa did not anticipate being fully responsible for the entire contract amount absent assistance from "other sources," including the Center City Commission. However, assuming the version of the contract submitted by Performa is the final written agreement, the contract does not contain a definite payment amount or payment terms.

The contract found by the trial court to be the final agreement between the parties is a bilateral contract between Tetra Tech and Performa. It definitively recites a "lump sum fee" in the amount of $17,000 on two pages, including Attachment B. As modified by Performa, however, Attachment B commits Performa to a payment in the amount of $3,500, and Performa asserts it is not responsible for payment of the remainder of the agreed upon contract price. Further, the contract contains no term stating that Performa would not be liable for the remainder of the lump sum fee should its efforts to secure amounts in excess of $3,500 from the Center City Commission be unsuccessful. In essence, then, Performa's argument, as we understand it, is that Tetra Tech agreed to a contract price of either $17,000 or $3,500, depending on whether Performa was able to secure funding from sources not a party to the contract. There is nothing in the contract or the record, however, to suggest that Tetra Tech agreed to simply forego most of its fee should Performa be unable to secure funding from other sources. In short, the record does not demonstrate mutual assent to an indefinite contract price. The contract is therefore unenforceable for indefiniteness and lack

of mutual assent. We accordingly award Tetra Tech recovery in quantum meruit, and remand for further proceedings to determine that amount.

### *Accord and Satisfaction*

We next turn to whether the trial court erred in determining that there had been accord and satisfaction between the parties where, during the course of the dispute, Performa tendered and Tetra Tech negotiated a check in the amount of $3,500 which purported to be "payment in full," where Tetra Tech continued to demand the outstanding balance, and where Tetra Tech later returned the payment amount. The party asserting the defense of accord and satisfaction bears the burden of proving it. *Quality Care Nursing Servs., Inc. v. C. B. Coleman*, 728 S.W.2d 1, 5 (Tenn. 1987)(citations omitted). A party asserting accord and satisfaction

> has the burden of proving the material allegations of his plea, an accord or new agreement, inclusion of the item or items of indebtedness in the action or suit, satisfaction by performance of the agreement or the agreement itself, that the payment was offered on the condition that, if accepted it would be in full settlement of the demand, and that the creditor understood the conditions of the tender, or the circumstances under which it was made were such that he was bound to understand, an acceptance by plaintiff in full satisfaction of his demand.

*Id.* (quoting *Inland Equip. Co. v. Tennessee Foundry and Machine Co.*, 241 S.W.2d 564, 565-66 (Tenn. 1951)). Further, it is "essential that the creditor shall have accepted" the debtor's tender

> with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

*Id.* (quoting *Helms and Willis v. Unicio County*, 64 S.W.2d 200, 202 (Tenn. 1933)(quoting *Lytle v. Clopton*, 261 S.W. 644, 666 (Tenn. 1924 )(quoting 1 Corpus Juris, 529))).

The trial court relied on *Sawner v. Smith Construction Co.*, 526 S.W.2d 492 (Tenn. Ct. App. 1975) for the proposition that accord and satisfaction was attained when Tetra Tech negotiated the check in the amount of $3,500 tendered by Performa in February 2005. The trial court quoted this Court's observation in *Sawner* that "prior to the time a check is cashed, a debtor may waive, extinguish or condition any statement thereon which would otherwise render the check a complete accord and satisfaction upon being cashed by the creditor." *Sawner*, 526 S.W.2d at 496. We disagree with the trial court, however, that *Sawner* stands for the proposition that the tender and negotiation of a check containing the notation "payment in full," without more, evidences an accord and satisfaction. In *Sawner*, we held that the "marking through of the words 'Acct. in full' by [the creditor] ha[d] the effect of removing those words from the face of the check." *Id.* We also noted in *Sawner*, however, that in *Cole v. Henderson*, the supreme court held that the negotiation of a check with a notation of "commission in full" was an accord and satisfaction where the creditor

contacted the debtor and was advised that the amount was all the debtor would pay. *Id.* at 495 (citing *Cole v. Henderson*, 454 S.W.2d 374 (Tenn. 1969)).

In *Quality Care Nursing*, the supreme court emphasized that an accord or agreement, "by definition, requires consent of both parties, express or implied." *Quality Care Nursing*, 728 S.W.2d at 5. In that case, the court noted that "especially in the present age of data processing and computer billing," something more than "the mere receipt and cashing of a check marked as payment in full" is required to demonstrate accord and satisfaction. *Id.* at 4. The *Quality Care Nursing* court held that there had been no automatic accord and satisfaction despite the tender and negotiation of a check marked as "payment in full" where there was no evidence that the debt was in dispute or that the creditor ever agreed to accept an amount less than the full amount owed. *Id.* The court stated:

> [i]t would be unrealistic in the modern business world for a debtor to send an installment payment to a creditor, which may be receiving hundreds or thousands of such checks, and to have the balance of his debt deemed discharged as a matter of law simply because of a legend the debtor placed thereon, absent any other proof of a compromise or settlement.

*Id.* at 5.

In this case, it is clear that Tetra Tech never agreed to accept payment in the amount of $3,500 in satisfaction of what Tetra Tech asserted was the contract price. On the contrary, in March 2005 Tetra Tech advised Performa that it had received its "partial payment" in February, and that it continued to seek payment for what it asserted was the full amount due. Performa has simply failed to carry its burden of demonstrating accord and satisfaction. We reverse on this issue.

### *Tetra Tech's Motion to Amend*

We next turn to Tetra Tech's assertion that the trial court erred by denying its motion to amend its complaint to assert a cause of action against John Elkington for fraud. The Tennessee Rules of Civil Procedure provide:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . . Otherwise, a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01. After a responsive pleading has been served, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court. *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. App. 1994); *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. App. 1979). As we noted in *Merriman*, when deciding whether to grant leave to amend, a trial judge should consider facts including undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Merriman*, 599 S.W.2d at 559. Tetra Tech's allegations of fraud are rendered moot in light of the trial court's finding that the contract as submitted by Mr. Elkington

was, in fact, faxed to Tetra Tech and represented the agreement of the parties. Thus, we decline to address this issue on appeal. *See Union Realty Co. v. Family Dollar Stores of Tenn. Inc.*, 255 S.W.3d 586, 590 (Tenn. Ct. App. 2007)(holding a controversy must remain live throughout the course of litigation, including the appeal process, or be dismissed as moot).

### *Holding*

We hold that the contract found by the trial court to be the contract between the parties is not enforceable for indefiniteness and lack of mutual assent. We further hold Performa failed to demonstrate accord and satisfaction, and that Tetra Tech is entitled to recover in quantum meruit. We remand this matter to the trial court for further proceedings to determine the amount to be recovered by Tetra Tech in quantum meruit. Costs of this appeal are taxed to the Appellee, Performa Entertainment Real Estate, Inc.

_____
DAVID R. FARMER, JUDGE